1998 ME 136

**STATE of Maine**

v.

**Samuel L. WARREN, III.**

Supreme Judicial Court of Maine.

Submitted on Briefs Dec. 23, 1997.

Decided June 3, 1998.

Geoffrey Rushlau, District Attorney, Michael P. Turndorf, Asst. Dist. Atty., Bath, for State.

Peter M. Rice, Yarmouth, for defendant.

Before ROBERTS, CLIFFORD, RUDMAN, DANA, LIPEZ, and SAUFLEY, JJ.

LIPEZ, Justice.

[¶ 1] Samuel L. Warren III appeals from the judgment entered in the Superior Court (Sagadahoc County, *Atwood, J.*) following a jury verdict finding him guilty of gross sexual assault in violation of 17–A M.R.S.A. § 253 (1983 & Supp.1997).[1] Warren argues, *inter alia*, that he was deprived of his constitutional right to a fair trial by the court's exclusion of all evidence concerning the child victim's alleged past sexual behavior.[2] We agree that the court erred in excluding all of the proffered evidence, and we are unable to conclude beyond a reasonable doubt that the error was harmless. Accordingly, we must vacate the judgment.

I.

[¶ 2] In January 1996 the grand jury returned an indictment charging Samuel L. Warren III with gross sexual assault in violation of 17–A M.R.S.A. § 253. At a two-day jury trial in June 1996, the following evidence was produced.

[¶ 3] On October 31, 1995, Warren visited the home of his sister, Virginia, who lived with her seven year old daughter, the victim in this case; her two sons, ages six and eight; her boyfriend; and several other relatives in Bath. According to the testimony of the victim, who was eight years old at the time of the trial, Warren entered her bedroom after she had gone to sleep that evening, kneeled on the floor next to her bed, and told her that he was returning to his home in New York. After saying goodnight to her, he pulled back her blanket, lifted her nightgown, and pulled down her underwear. The victim testified that Warren then "started licking me on my private spot," which she explained was the place on the front of her body that she uses for going to the bathroom. She recalled that her legs were apart, and that he licked her on "the inside" of her private spot.

[¶ 4] After Warren left her bedroom, the victim immediately reported the incident to her mother, Virginia, who testified that she confronted Warren about her daughter's accusations and that Warren claimed he did not know what she was talking about.[3] Virginia then took her daughter to the hospital emergency room. According to the testimony of the physician who examined the child, there was no physical evidence of sexual abuse. The physician also testified, however, that the type of conduct alleged in this case would be unlikely to produce any detectible physical evidence. Following the medical examination, the victim and her mother went to the Bath Police Department, where they were interviewed by Detective Donald Marsh in the early morning hours of November 1.

[¶ 5] According to the testimony of Detective Marsh, Warren went to the police station at Marsh's request shortly before 3:00 a.m. to be interviewed about the allegations. During the interview, Warren acknowledged that he had entered the victim's bedroom to kiss her goodnight, but claimed that he could not remember whether there had been any sexual contact. The State also introduced through Detective Marsh a written statement prepared by Warren following the interview. In the statement, Warren wrote that he kissed the victim goodnight, left her room,

1. 17–A M.R.S.A. § 253 provides in pertinent part:
   1. A person is guilty of gross sexual assault if that person engages in a sexual act with another person and:
      . . .
      B. The other person, not the actor's spouse, has not in fact attained the age of 14 years.
   . . .
   17–A M.R.S.A. § 253 (Supp.1997). A "sexual act" is defined in pertinent part as:
   (1) Any act between 2 persons involving direct physical contact between the genitals of one and the mouth or anus of the other, or direct physical contact between the genitals of one and the genitals of the other.
   17–A M.R.S.A. § 251(C) (1983 & Supp.1997).

2. Because we vacate the judgment on the basis of this argument, we have no occasion to consider Warren's remaining contentions.

3. There was slightly conflicting testimony regarding Warren's exact response when confronted by Virginia. Virginia recalled that Warren responded by stating, "I don't know what you're talking about." According to the victim's testimony, however, Warren expressly denied any wrongdoing to Virginia. The victim's grandmother (Warren's mother) testified that she too confronted her son about the child's allegations shortly after the incident, and that he expressly denied wrongdoing.

and was confronted by Virginia. The statement concluded: "I don't know if it happened but if it did ... I'm sorry you are not to blame I am you are right in tell your mom [sic]."

[¶ 6] As the trial progressed, defense counsel sought to introduce evidence to establish that the victim had been exposed to sexual conduct similar to Warren's alleged conduct on two prior occasions, in part to rebut the jury's natural inference of her sexual naivete. First, according to the police report filed in connection with the charges against Warren, the victim told the investigating officer that when she was two years old a baby sitter's boyfriend kissed her vagina after she (the child) had scratched it while taking a bath. The court excluded the evidence, concluding that the victim had not demonstrated extraordinary sexual knowledge for her age to give rise to an inference of sexual naivete. Second, defense counsel sought to introduce evidence concerning an alleged sexual encounter between the victim and her older brother which occurred in 1993. During a *voir dire* examination, the victim's great-aunt testified that in 1993 she had personally observed the victim's older brother "rubbing his face" against the victim's vagina while her underwear was pulled down around her knees.[4] After noting that the victim had demonstrated no sexual "proclivities" and that there was no evidence to show that she was an "active participant" in the 1993 incident, the court precluded the admission of all evidence regarding the incident, again reasoning that the victim had not displayed extraordinary knowledge of sexual matters for her age:

> [F]or the inference [of sexual naivete] to arise there must be a display of extraordi-

nary sexual knowledge, not the child's age [sic]. Here we have none of that and as I indicated yesterday the experience of this child and her testimony certainly does not display extraordinary sexual knowledge for his or her age, and I make that finding based on her demeanor on the witness stand, which was certainly very reluctant, embarrassed, marked by some distress in her voice when describing all this and her use of childish terms to describe her genitals. So based upon all of that the court is going to exclude the description of the event that [the great-aunt] will describe....

[¶ 7] At the conclusion of the trial, the jury returned a verdict of guilty and judgment was entered accordingly. Warren was sentenced to twenty years imprisonment, all but fifteen years suspended, and six years probation. This appeal of the judgment of conviction followed.

## II.

[¶ 8] Warren argues that he was deprived of his constitutional right to a fair trial by the court's exclusion of all evidence concerning the child victim's alleged past sexual behavior with her baby sitter's boyfriend in approximately 1990 and with her older brother in 1993. Relying on our decision in *State v. Jacques*, 558 A.2d 706 (Me.1989), he contends that he was entitled to present evidence concerning the existence of an alternative source of the victim's extraordinary sexual knowledge for the purpose of rebutting the jury's natural presumption of her sexual naivete, notwithstanding M.R. Evid. 412.

---

4. The victim's great-aunt testified in pertinent part:

> Q: Now, you have described an incident where you claim that [the victim] was laying on the floor and that her brother [ ]was doing something?
> A: Uh-huh.
> Q: Where were her panties when you say her panties were down?
> A: They were down by her knees. They were still on her legs.
> Q: And that's where his face was as you claim?
> A: On her panty area.

> Q: It was not on her vagina; is that correct?
> A: Well, that's her panty area.
> Q: Pardon me, but what I need to know is was his face on her vagina or was his face on her panties?
> A: On her vagina.
> Q: Did you see him do anything?
> A: I saw his face on her vagina.
> Q: Did you see him licking her vagina or kissing her vagina?
> A: No.
> Q: Nothing like that?
> A: I saw him rubbing his face on her.

[¶ 9] Pursuant to M.R. Evid. 412, a victim's past sexual behavior generally is not admissible at trial.[5] This rule protects the State's strong and legitimate interest in preventing a trial from becoming a trial of the victim, rather than of the accused. *See Jacques*, 558 A.2d at 707. We have recognized, however, that the State's interest in protecting victims of sexual abuse "is neither absolute nor paramount." *Id.* Rather, the State's interest must be weighed against a defendant's constitutional right, emanating from the right of confrontation and the rights to compulsory process and to due process, to be afforded a meaningful opportunity to present a complete defense. *See id.* at 708 (citing *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) (state's interest in protecting juvenile offender does not take precedence over defendant's right to effectively cross-examine)). The Advisory Committee Note accompanying Rule 412 reflects this balancing of competing interests with its statement that "evidence constitutionally required to be admitted" falls outside the scope of the text of Rule 412's exclusion. *See* M.R. Evid. 412 advisory committee's note to 1983 amend., Me. Rptr., 449–458 A.2d LXX; *see also Jacques*, 558 A.2d at 708.

■■■ [¶ 10] As we observed in *Jacques*, when a prosecutor "opens the door" to evidence otherwise inadmissible pursuant to Rule 412 by affirmatively offering evidence of a victim's sexual inexperience or chastity on direct, the admission of a defendant's evidence to the contrary may be "constitutionally required," subject to the limitations of Rule 403. *See id.* at 708 (citing FIELD & MURRAY, MAINE EVIDENCE § 412, at 139 (2d ed.1987)). When the victim of a sex crime subject to Rule 412 is a child, however, the child's sexual inexperience may be presumed by the factfinder even in the absence of any affirmative action by the prosecutor:

When the victim is a child, as in this case, the lack of sexual experience is automatically in the case without specific action by the prosecutor. A defendant therefore must be permitted to rebut the inference a jury might otherwise draw that the victim was so naive sexually that she could not have fabricated the charge.

*Id.; cf. State v. Davis*, 406 A.2d 900, 901–02 (Me.1979) (pre-Rule 412 case observing that defendant was subjected to "grave risk that, not being otherwise informed, the jury might regard a complainant of tender years as too innocent of sexual matters to think up the kind of sexual conduct that she had described unless it was real and she had actually experienced it"). *Jacques* requires that a jury be informed of the child's past sexual behavior in order to rebut the natural inference of her sexual naivete, notwithstanding Rule 412's prohibition.

■■■ [¶ 11] The *Jacques* exception to Rule 412 remains subject to traditional rules of relevancy. *See* M.R.Evid. 402 (evidence which is not relevant is not admissible); *cf.* 2 CHRISTOPHER B. MUELLER & LAIRD C. KIRK-PATRICK, FEDERAL EVIDENCE § 159, at 200 (2d ed.1994) (there is no constitutional right to introduce irrelevant evidence). To be relevant, evidence must be offered to prove some fact of consequence to the proceeding, and must be probative of the fact for which it is offered. *See* M.R. Evid. 401. When a jury infers that a child is sexually naive and could not possibly know about the sex acts she describes unless she had experienced them at the hands of the defendant, evidence to rebut that inference is "of consequence" to the proceedings. *Cf.* MICHAEL H. GRAHAM, HANDBOOK OF FEDERAL EVIDENCE § 401.1, at 145 (3d ed. 1991) ("[T]he term 'fact of consequence' includes facts bearing circumstantially upon the evaluation of the probative value

**5.** Maine Rule of Evidence 412 provides in pertinent part:

(b) In a criminal case in which a person is accused of rape, gross sexual assault, gross sexual misconduct, unlawful sexual contact, or sexual abuse of a minor, the only evidence of a victim's past sexual behavior that may be admitted is the following:

(1) Evidence of specific instances of sexual behavior with persons other than the accused,

offered by the accused upon the issue of whether the accused was or was not, with respect to the alleged victim, the source of semen or injury; or

(2) Evidence of specific instances of sexual behavior with the accused offered by the accused on the issue of whether the alleged victim consented to the sexual behavior with respect to which the accused is charged.

to be given to other evidence in the case, including the credibility of witnesses."). When a jury would not infer a child's sexual naivete, evidence of her past sexual behavior is not "of consequence" to the proceedings. *See State v. Knox,* 634 A.2d 952, 953 (Me. 1993) (noting that before evidence to rebut tender years assumption becomes admissible, the assumption itself must arise). Such an inference will arise only when a child displays a knowledge of sexual matters beyond her years. In *State v. Knox,* for example, we concluded that the victim, who was nearly fifteen years old at the time of trial, "was simply too old to cause the jury to believe that he would not know about the kind of sexual acts he described without having experienced them." *Id.; see also State v. Gilman,* 637 A.2d 1180, 1181 (Me.1994). In other words, evidence of the fifteen year old child's past sexual behavior in *Knox* was simply of no consequence to the proceedings, since there was no risk that the jury would attribute enhanced credibility to his testimony by presuming that he could not possibly have fabricated or imagined the conduct he described at trial.

[¶ 12] Moreover, to be probative of the material question of the child's capacity to fabricate or imagine the alleged conduct, the past sexual behavior sought to be admitted must have some rational tendency to establish that it, rather than the defendant's alleged conduct, was the source of the child's extraordinary sexual knowledge displayed during the trial. This tendency is present when the past sexual behavior is similar to the defendant's alleged conduct, thereby furnishing the child with the knowledge and capacity to fabricate or imagine the later conduct. Past sexual behavior, if dissimilar from the defendant's alleged conduct, could not be the source of a child's allegations and is of no probative value to the jury's assessment of whether the child might have fabricated or imagined the specific allegations

against the defendant. *See, e.g., Commonwealth v. Ruffen,* 399 Mass. 811, 507 N.E.2d 684, 688 (1987) ("Absent such a showing by the defendant of prior similar sexual abuse, it is difficult to envision a situation where evidence of the details of past sexual abuse would be relevant."), *cited in Jacques,* 558 A.2d at 708 n. 3; *cf., e.g., State v. Davis,* 406 A.2d at 901–02 (where child allegedly had preoccupation with pulling down the pants of other people, and where this preoccupation "was so prominent in the complainant's accusation against the defendant," court erred by excluding all evidence of the child's past sexual behavior). To the extent that this basic relevancy requirement was not implicit in the *Jacques* and *Davis* decisions, we now state it explicitly.

[¶ 13] In this case, the court concluded that the victim did not display extraordinary sexual knowledge for her age based on her embarrassed, reluctant, distressed demeanor on the stand and her use of childish terms to describe her genitals, and excluded evidence of her past sexual behavior pursuant to Rule 412. A child victim's apprehensive demeanor and reliance on euphemisms, however, do not establish that she has failed to display extraordinary sexual knowledge for her age. The critical inquiry is whether the child demonstrates a knowledge of sexual matters beyond her years; such knowledge could be evidenced even by an unsophisticated, reluctant description of the alleged sexual conduct. It is the nature and extent of a child victim's sexual knowledge, not simply the manner in which she describes it, that must be evaluated for *Jacques* purposes.[6]

[¶ 14] The victim in this case was seven years old at the time of the alleged conduct, and eight years old at the time of trial. Her testimony, although couched in euphemisms, was an accurate description of oral sex. Although we establish no bright-line age threshold here and each case must

---

6. Similarly, the court's observations that the victim did not seem to have been an "active participant" in the prior incidents and that she had not demonstrated any "sexual proclivities" were not relevant for *Jacques* purposes. The *Jacques* rationale rests simply on the existence of an alternative source of a child's extraordinary sexual knowledge. A defendant's entitlement to rebut the jury's inference of a child's sexual naivete by showing an alternative source of her extraordinary knowledge does not depend on whether the child was the victim or the aggressor in the prior incident.

be evaluated on its own facts, we cannot conclude that an eight year old child is ordinarily aware of the particular acts constituting oral sex. The victim's knowledge of sexual matters was extraordinary for her age, creating the risk that the jury would attribute enhanced credibility to her testimony by inferring sexual naivete. Moreover, the victim's alleged past sexual behavior, particularly the 1993 incident with her older brother, is strikingly similar to the charged conduct, making evidence of the past sexual behavior highly probative of the existence of an alternative source of her knowledge. In both the 1993 incident and the incident charged in this case, there is a claim that the victim's underwear was pulled down and that someone "rubbed his face against" or "licked" her genital area. In all three incidents, there is the allegation of oral contact with the victim's genital area by a male. In these circumstances, we find that the proffered evidence falls within the scope of the *Jacques* exception to Rule 412, and we must conclude that the court erred by excluding all evidence of the victim's alleged past sexual behavior.[7]

### III.

[¶ 15] The harmless error doctrine "recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error." *See Delaware v. Van Arsdall,* 475 U.S. 673, 681, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (citation omitted) (citing R. Traynor, The Riddle of Harmless Error 50 (1970)). The Supreme Court has "consistently made clear that it is the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless, including

most constitutional violations." *United States v. Hasting,* 461 U.S. 499, 509, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983) (citing *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)).

[¶ 16] Although the Court has declined to apply harmless error analysis to constitutional violations that are "structural defects in the constitution of the trial mechanism" affecting "the entire conduct of the trial from beginning to end," it has found harmless error analysis to be applicable when the violation is merely a "trial error." *Arizona v. Fulminante,* 499 U.S. 279, 309–10, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); *see also State v. Huntley,* 681 A.2d 10, 12 n. 3 (Me.1996). In the instant case, the trial court's exclusion of all evidence concerning the child victim's past sexual behavior was a "trial error"—that is, it was an "error that occurred during the presentation of the case to the jury, and that may therefore be quantitatively assessed in the context of other evidence presented"—and therefore is subject to harmless error analysis. *Arizona v. Fulminante,* 499 U.S. at 308, 111 S.Ct. 1246; *cf., e.g., Van Arsdall,* 475 U.S. at 684, 106 S.Ct. 1431 (holding that "the constitutionally improper denial of a defendant's opportunity to impeach a witness for bias, like other Confrontation Clause errors, is subject to *Chapman* harmless-error analysis").

[¶ 17] When a trial error is of constitutional magnitude, the appropriate harmless error inquiry is whether, after a review of the whole record, we are satisfied beyond a reasonable doubt that the error did not contribute to the verdict obtained.[8] *See Van Arsdall,* 475 U.S. at 680–81, 106 S.Ct. 1431 (citing *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, (1967)); *State v. York,* 1997 ME 156, ¶ 11, 705 A.2d 692, 695 (citing *State v. Hassapelis,* 620 A.2d

---

7. We emphasize, however, that once a defendant has been afforded the constitutional right to present an effective defense, a court retains broad discretion to impose reasonable limits on the scope of cross-examination of the victims pursuant to M.R.Evid. 403 and 611. *See Jacques,* 558 A.2d at 708 (citing *State v. Gagne,* 554 A.2d 795, 796 (Me.1989); *State v. Day,* 538 A.2d 1166, 1167–68 (Me.1988); *State v. White,* 456 A.2d 13, 15 (Me.1983)).

8. In contrast, when an error is not of constitutional magnitude, a "preserved error should be treated as harmless 'if the appellate court believes it is highly probable that the error did not affect the judgment.'" *State v. Hassapelis,* 620 A.2d 288, 291 n. 4 (Me.1993) (quoting *State v. True,* 438 A.2d 460, 467 (Me.1981)).

288, 293 (Me.1993)); *State v. Diaz*, 681 A.2d 466, 468 (Me.1996); *State v. Harper*, 613 A.2d 945, 950 (Me.1992). Thus, a trial error of constitutional magnitude is not harmless if there is a reasonable possibility that it contributed to the verdict, *see Chapman*, 386 U.S. at 23–24, 87 S.Ct. 824, regardless of whether there was sufficient other evidence on which the defendant could have been convicted. *See* R. TRAYNOR, THE RIDDLE OF HARMLESS ERROR 26–30 (1970).

[¶ 18] In *Van Arsdall*, which concerned the trial court's erroneous exclusion of evidence to impeach a witness for bias, the Court fashioned the following test of "harmlessness":

> The correct inquiry is whether, assuming the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Van Arsdall*, 475 U.S. at 683–84, 106 S.Ct. 1431; *see also State v. Begin*, 652 A.2d 102, 105 (Me.1995) (stating that "the harmless error inquiry focuses on the importance to the defense of the evidence excluded and the prejudicial effect of the exclusion").

[¶ 19] Applying the *Van Arsdall* harmless-error factors to the court's exclusion of all evidence regarding the child victim's past sexual behavior in the instant case, we cannot conclude beyond a reasonable doubt that the court's error did not affect the factfinding process of the jury. To secure the conviction, the State relied heavily on the testimony of the eight-year-old victim, who was able to describe both the alleged incident and the surrounding circumstances. As would be expected in many sexual abuse cases, however, there was no medical evidence to corroborate her allegations, nor were there any witnesses to the incident. Because the victim was the sole witness to establish the essential elements of the charge, her testimony was critical to the State's case and cannot be characterized as cumulative. *Compare, e.g., United States v. Hudson*, 970 F.2d 948, 954 (1st Cir.1992) (court's erroneous exclusion of evidence tending to show bias of only witness to establish the essential elements of the government's case was not harmless beyond a reasonable doubt); *with State v. Begin*, 652 A.2d at 105 (court's erroneous exclusion of exculpatory testimony without conducting *voir dire* was harmless beyond a reasonable doubt, where witness's testimony went only to collateral issue and was cumulative).

[¶ 20] Other than the victim's testimony, the evidence against Warren was limited to his statements to the police and to his family following the alleged incident, in which he claimed several times that he could not remember what had happened with the victim. Although these statements could be construed as inculpatory, they were nonetheless ambiguous. Thus, we cannot say beyond a reasonable doubt that the jury convicted the defendant based on the sheer volume of evidence against him, and that the verdict was surely unattributable to the error. To the contrary, if Warren had been permitted to introduce evidence to show that the victim had an alternative source of her unusual sexual knowledge, thereby eliminating any attribution of enhanced credibility to her testimony based on the jury's inference of her sexual naivete, there is a reasonable possibility that the jury's factfinding process would have been affected. In these circumstances, we are unable to conclude beyond a reasonable doubt that the court's error in excluding all evidence of the victim's past sexual behavior did not affect the outcome of the trial.

The entry is:

Judgment vacated.