2001 ME 143

**STATE of Maine**

v.

**Richard R. BURDICK.**

Supreme Judicial Court of Maine.

Argued: April 10, 2001.
Decided: Oct. 19, 2001.

G. Steven Rowe, Attorney General, Charles K. Leadbetter, State Solicitor (orally), Nancy Torreson, Asst. Attorney General, Augusta, and Michael E. Povich, District Attorney, Ellsworth, for State.

Kevin L. Barron (orally), Ellsworth, for defendant.

Panel: WATHEN, C.J.,* and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

SAUFLEY, J.

[¶ 1] Richard Burdick appeals from the judgment entered in the Superior Court (Hancock County, *Hjelm, J.*) following a jury verdict finding him guilty of, among other things, attempted murder, pursuant to 17–A M.R.S.A. § 152(4) (Supp. 2000).[1]

---

\* Wathen, C.J., sat at oral argument and participated in the initial conference but resigned before this opinion was adopted.

1. This section of the attempted murder statute, 17–A M.R.S.A. § 152(4) (Supp. 2000), has been repealed and replaced by P.L. 2001, ch. 413, § 1 (effective Sept. 21, 2001). Because Burdick was charged, convicted, and sentenced pursuant to the preamendment attempted murder statute, all references to the attempted murder statute herein are to its preamendment form. *See* P.L. 1995, ch. 422,

Burdick contends that the sentence imposed on the attempted murder charge was an illegal sentence because it deprived him of his constitutional rights to due process and trial by jury pursuant to the holding of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).[2] We affirm the judgment.

## I. BACKGROUND

[¶ 2] All of the charges against Burdick arose out of a single incident in which Burdick shot a law enforcement officer twice in the chest at a very close range.[3] After the jury found Burdick guilty on all charges, the court sentenced him to forty years in the custody of the Department of Corrections on the attempted murder charge. The court also imposed shorter sentences on each of the other charges, to run concurrently with the forty-year sentence for attempted murder.[4]

[¶ 3] The evidence leading to Burdick's conviction can be summarized as follows. On the night of June 13, 1999, three Hancock County Sheriff's officers were directed to Richard Burdick's two-story residence in Orland to arrest him on an outstanding felony warrant from Massachusetts. Although Burdick initially came to the door, he retreated into the house and up to the second floor after seeing two of the officers in uniform. The officers did not follow Burdick into the house, and instead attempted to lure him outside.

[¶ 4] After a few minutes, Burdick began descending the stairs with his wife in front of him. Unknown to the officers at this time, Burdick had placed a .22 magnum handgun in his pants pocket. Two of the officers, with guns drawn, directed Burdick to exit the house. At that point, Burdick realized that the officers intended to arrest him and retreated back upstairs. This time, the officers pursued him into the house and up the stairs.

[¶ 5] When Burdick reached the second floor, he shut the door at the top of the landing. The first officer in pursuit, Jeffrey McFarland, forced the door open and rushed inside. Although no lights were on, McFarland could make out Burdick trying to hide behind a rack of clothes. Burdick's right side was obstructed from McFarland's view. McFarland stepped forward, grabbed Burdick's left arm with his right hand, and pulled Burdick toward

§ 1 (effective Sept. 29, 1995) (codified at 17–A M.R.S.A. § 152(4)), *repealed and replaced* by P.L. 2001, ch. 413, § 1.

2. The appeal before us is a direct appeal from the judgment challenging the legality of the sentence. *See State v. Ricker,* 2001 ME 76, ¶ 19, 770 A.2d 1021, 1027. Burdick also filed an application to appeal the sentence. That application was denied by the sentence review panel on September 21, 2000. *See* 15 M.R.S.A. §§ 2151–2157 (Supp.2000); M.R.Crim. P. 40. In a separate pro se brief, Burdick also raises several other challenges to the conviction. Burdick's contentions do not require any discussion.

3. The officer was wearing a bulletproof vest and survived the shooting without significant physical injuries.

4. Burdick was also convicted of aggravated assault, 17–A M.R.S.A. § 208(1)(B) (1983), assault on an officer, 17–A M.R.S.A. § 752–A(1)(A) (1983), criminal threatening with the use of a dangerous weapon, 17–A M.R.S.A. § 209 (1983), and reckless conduct with the use of a dangerous weapon, 17–A M.R.S.A. § 211 (1983). He was sentenced to forty years imprisonment for attempted murder (count I), ten years imprisonment for aggravated assault (count II), ten years imprisonment for assault on an officer (count III), five years imprisonment for criminal threatening with the use of a dangerous weapon (count IV), and five years imprisonment for reckless conduct with the use of a dangerous weapon (count V), all to be served concurrently.

him in preparation for securing him with handcuffs.

[¶ 6] Almost immediately, McFarland saw and heard Burdick discharge his .22 magnum handgun with his right hand, striking McFarland in the chest. Burdick then fired a second shot into McFarland's chest, and McFarland collapsed on the floor. The other two officers, James Willis and Kenneth Mitchell, were only steps behind McFarland. Willis discharged two gun shots, striking Burdick once in the right front pelvic area. Mitchell fired multiple shots, but none struck Burdick. The three officers then left the building. Because McFarland was wearing a bulletproof vest, the physical injuries to his chest were minor.[5]

[¶ 7] A stalemate between Burdick and the Maine State Police tactical team ensued when Burdick refused to come outside. Ultimately, the officers entered the second-floor room and found Burdick unconscious.[6] Burdick was taken to a hospital for treatment and was subsequently charged with, inter alia, the attempted murder of Jeffrey McFarland.

[¶ 8] At trial, a number of witnesses testified on behalf of the State, including officers Mitchell, Willis, and McFarland. Burdick, as the sole witness for the defense, testified about his own version of the incident. Burdick did not dispute that he fired the shots, that McFarland was a uniformed law enforcement officer, or that he understood that the officers were there to arrest him. He testified, however, that when he descended the stairs the second time, he had placed his gun in his pocket in case he had to kill himself or "so I could cover myself." He explained to the jury that after McFarland chased him upstairs and forced his way into the room, he accidentally shot McFarland in the ensuing struggle. The jury returned a guilty verdict as to each of the five charges.

[¶ 9] During the sentencing stage, the State sought imposition of a life imprisonment sentence pursuant to the enhanced sentencing provisions of the attempted murder statute, 17–A M.R.S.A. § 152(4)(F) (Supp. 2000), based on the allegation that "[t]he attempted murder was committed against a law enforcement officer while the officer was acting in the performance of that officer's duties."[7] *Id.* The court con-

---

5. Expert testimony at trial established that McFarland would have died had he not been wearing the bulletproof vest.

6. A subsequent search of the second floor revealed Burdick's .22 magnum handgun on the bed, a partial box of .22 Winchester magnum jacketed hollow point bullets containing forty-four rounds on the nightstand, and four live .22 magnum rounds scattered around the area of the bed. Two .22 magnum casings were found by the clothes rack.

7. The attempted murder statute provides, in relevant part:
   The special penalty provision of life imprisonment may be imposed only if the court finds one or more of the following aggravating circumstances is in fact present:
   A. The person's intent to kill was accompanied by premeditation-in-fact;

B. The person, at the time of the crime, intended to cause multiple deaths;
C. The person was previously convicted of criminal homicide or any other crime involving the use of deadly force against a person;
D. The attempted murder was accompanied by torture, sexual assault or other extreme cruelty inflicted upon the victim;
E. The attempted murder was committed in a penal institution by an inmate of that institution against another inmate or against prison personnel;
F. The attempted murder was committed against a law enforcement officer while the officer was acting in the performance of that officer's duties; or
G. The attempted murder was committed against a hostage.
17–A M.R.S.A. § 152(4) (Supp. 2000).

sidered the fact that the crime of attempted murder was committed against a law enforcement officer and sentenced Burdick to forty years in prison, a sentence the court characterized as "probably a de facto life sentence." Burdick then filed this appeal.

## II. DISCUSSION

[¶ 10] Pursuant to the U.S. Supreme Court's holding in *Apprendi*, "[o]ther than the fact of a prior conviction, *any fact that increases the penalty for a crime beyond the prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348 (emphasis added). The Court in *Apprendi* reasoned that the due process requirements of the Fourteenth Amendment and the right to trial by jury of the Sixth Amendment, taken together, "indisputably entitle a criminal defendant to 'a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.'" *Id.* at 476–77, 120 S.Ct. 2348 (quoting *United States v. Gaudin*, 515 U.S. 506, 510, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995)); *see also In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Because "facts that expose a defendant to a punishment greater than that otherwise legally prescribed [are] by definition 'elements' of a separate legal offense," such facts "must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 483 n. 10, 490, 120 S.Ct. 2348; *see also Jones v. United States*, 526 U.S. 227, 251–52, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) (holding that provisions of car-jacking statute that established higher penalties to be imposed when offense resulted in "serious bodily injury" or "death" set forth additional elements of offense, not mere sentencing factors).

[¶ 11] Burdick contends, pursuant to the holding in *Apprendi*, that his attempted murder sentence is illegal because he was unconstitutionally *exposed* to an increased statutory maximum sentence of life imprisonment, based on facts that were not "submitted to the jury, and proved beyond a reasonable doubt" as part of his attempted murder charge. *See Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348. Burdick's argument requires us to determine whether the enhanced sentencing provision of the attempted murder statute, as applied to Burdick, violated his constitutional right to trial by jury and due process, pursuant to the Sixth and Fourteenth Amendments of the federal constitution. *See id.* at 476–77, 120 S.Ct. 2348; 17–A M.R.S.A. § 152(4). Specifically at issue here is the special penalty provision of the attempted murder statute that allowed the increase in the maximum period of imprisonment based upon the court's finding, at the sentencing stage, that the attempted murder was committed against a "law-enforcement officer ... acting in the performance of that officer's duties." *See* 17–A M.R.S.A. § 152(4)(F).

[¶ 12] Preliminarily, we note that Burdick has raised this challenge for the first time on appeal. *See State v. Thornton*, 485 A.2d 952, 952–53 (Me.1984); *see also Younie v. State*, 281 A.2d 446, 448–49 (Me. 1971) (declining to review the petitioner's constitutional due process claim, "because it is raised for the first time in his brief to this Court upon appeal"). Burdick did not raise or present this issue to the Superior Court, nor did he raise the issue in his application for leave to appeal his sentence. *See* 15 M.R.S.A. § 2151 (Supp. 2000).[8]

8. Counsel for Burdick on appeal did not represent him at trial.

[¶ 13] In the absence of a preserved challenge, we review Burdick's appeal for "obvious errors" affecting his substantial rights. *See* M.R.Crim. P. 52(b); *State v. Dube,* 522 A.2d 904, 907 (Me.1987). "Because [the defendant] did not raise this *Apprendi* claim at the time he was sentenced, our review is only for plain error." *United States v. Gilliam,* 255 F.3d 428, 434 (7th Cir.2001); *accord United States v. Burgos,* 254 F.3d 8, 11 (1st Cir.2001).[9] We will vacate Burdick's sentence "only if the alleged impropriety is obvious and worked a manifest injustice on the defendant." *State v. Ilsley,* 604 A.2d 17, 18 (Me.1992).

[¶ 14] We must therefore determine first, whether the application of the *Apprendi* principles to the statute and sentence before us discloses error, and if so, second, whether the error worked a substantial injustice or affected Burdick's substantial rights.

A. Statutory and Constitutional Framework

1. Maine's Attempted Murder Sentencing Scheme

[¶ 15] Because Burdick challenges the propriety of his sentence on the attempted murder charge, we begin our analysis with a brief explanation of the sentencing scheme contained in the attempted murder statute, 17–A M.R.S.A. § 152(4). Ordinarily, the maximum allowable sentence for a crime pursuant to Maine's criminal code is governed by 17–A M.R.S.A. § 1252 (1983 & Supp. 2000). Pursuant to that statute, crimes are categorized into five classes, ranging from A through E, and a maximum term of imprisonment of a definite period of days, months, or years is set for each of those classes. *Id.*[10]

[¶ 16] The maximum allowable sentence for attempted murder at the time of Burdick's sentencing, however, was not governed by section 1252 but by 17–A M.R.S.A. § 152(4), as amended by P.L. 1995, ch. 422, § 1 (effective Sept. 29, 1995). Before the 1995 amendments, the crime of attempted murder was treated as a Class A crime, thus punishable by a term of imprisonment not to exceed forty years. 17–A M.R.S.A. §§ 152, 1252(2)(A) (1983). The 1995 amendments increased the ordinary maximum term of imprisonment for attempted murder to a "definite period of imprisonment of *any term of years.*" 17–A M.R.S.A. § 152(4) (Supp. 2000) (emphasis added).

[¶ 17] The 1995 amendments also added two provisions to the attempted murder statute that may reduce or enhance that maximum term of imprisonment. L.D. 200 (117th Legis. 1995). If the sentencing court finds that the defendant acted "un-

---

9. Our review pursuant to the "obvious error" standard of M.R.Crim. P. 52(b) is similar to the "plain error" review announced by the U.S. Supreme Court pursuant to Fed. R.Crim.P. 52(b):

Under that test, before an appellate court can correct an error not raised at trial, there must be (1) "error," (2) that is "plain," and (3) that "affect[s] substantial rights." If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error " ' "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." ' "

*Johnson v. United States,* 520 U.S. 461, 466–67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (citations omitted).

10. A "Class A" crime is punishable by a definite period of imprisonment "not to exceed 40 years," and "Class B" and "Class C" crimes are punishable by a definite period of imprisonment "not to exceed 10 years" and "5 years" respectively. 17–A M.R.S.A. § 1252(2)(A)–(C) (1983 & Supp. 2000). A "Class D" crime is punishable by a period of "less than one year" while a "Class E" crime is punishable by a period of imprisonment "not to exceed 6 months." *Id.* § 1252(2)(D)–(E) (1983).

der the influence of extreme anger or extreme fear brought about by adequate provocation," the maximum term of imprisonment is reduced to "40 years," the same as that for a Class A crime. *Id.;* 17–A M.R.S.A. § 1252(2)(A). If, however, the court finds the presence of one or more of the specified "aggravating circumstances," the court has the option of imposing the "special penalty provision of life imprisonment." 17–A M.R.S.A. § 152(4)(A)–(G); L.D. 200 (117th Legis. 1995) (citing *State v. Shortsleeves,* 580 A.2d 145, 149–50 (Me. 1990)). Among those aggravating circumstances is the finding that "[t]he attempted murder was committed against a law enforcement officer ... acting in the performance of that officer's duties." 17–A M.R.S.A. § 152(4)(F).

■ [¶ 18] Thus, absent special findings by the sentencing court, the basic statutory maximum sentence for attempted murder is a "definite period of imprisonment of any term of years." *Id.* § 152(4). From that term of years, the statute permits a downward *or upward* adjustment in the maximum sentence depending on the court's finding of certain factual circumstances. *Id.* The statute does not require that the aggravating circumstances be "submitted to a jury" as part of the defendant's charge and "proved beyond a reasonable doubt," nor are the aggravating circumstances included in the elements of the crimes as described in subsection 1 of section 152. *See id.* § 152(1).

### 2. *Apprendi* Analysis

[¶ 19] There is no question that the holding in *Apprendi* places serious constitutional limitations on the "special [enhanced] penalty provision of life imprisonment." *See* 17–A M.R.S.A. § 152(4); *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348. The State does not dispute that a life sentence is intended by the Legislature to be a sentence that is "greater" than a sentence of a definite period of any term of years. *See Shortsleeves,* 580 A.2d at 149 (characterizing "life sentence" as the "harshest penalty" in Maine). If the finding that the attempted murder was committed with an aggravating circumstance is used to increase the penalty for the crime beyond the prescribed statutory maximum of a term of years, that fact is not merely a sentencing factor, but effectively becomes the functional equivalent of an element of the "aggravated" attempted murder offense.[11] *See Apprendi,* 530 U.S. at 490, 494 n. 19, 120 S.Ct. 2348; *accord United States v. Anderson,* 236 F.3d 427, 428 (8th Cir. 2001). A court's finding of the aggravating circumstance, in this respect, "is appropriately characterized as 'a tail which wags the dog of the substantive offense.'" *Apprendi,* 530 U.S. at 495, 120 S.Ct. 2348 (quoting *McMillan v. Pennsylvania,* 477 U.S. 79, 88, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986)).

■ [¶ 20] Accordingly, because the aggravating circumstance was not submitted to the jury as an element of the attempted murder charge, and the jury was not re-

---

**11.** The State, in its brief and during oral arguments, conceded that there is a "constitutional infirmity" in having the "sentencing court (rather than a jury) ... determine the presence or absence of an 'aggravating circumstance'" if the defendant receives an enhanced sentence as a result of that finding. On June 15, 2001, the governor signed into law, "An Act Creating the New Crime of Ag-gravated Attempted Murder" to amend the current attempted murder statute. P.L.2001, ch. 413 (effective Sept. 21, 2001). That Act creates the new crime of "aggravated attempted murder," which explicitly makes the current "aggravating circumstances" elements of the crime. *Id.* § 2 (to be codified at 17–A M.R.S.A. § 152–A).

quired to make that finding beyond a reasonable doubt on that element,[12] the court was limited to sentencing Burdick to the basic statutory maximum sentence of "any term of years." *See Apprendi*, 530 U.S. at 481, 120 S.Ct. 2348; 17–A M.R.S.A. § 152(4).

[¶ 21] In the absence of a challenge by Burdick, however, the court understood the attempted murder statute as granting it the authority to impose the enhanced sentence of life imprisonment based on its own finding that Burdick's attempted murder was committed against a law enforcement officer:

> [I]t seems to me that under the circumstances of the—of this case this is a particularly appropriate application of the extended range of sentences that are available here compared to other crimes of attempted murder when the victim is not a member of the law enforcement community acting in performance of—of his duties.

In so concluding, the court found the existence of an aggravated circumstance and sentenced Burdick to a definite term of forty years, a sentence that it characterized as "probably a de facto life sentence."

[¶ 22] Burdick argues that the sentence in this case resulted in a deprivation of his constitutional rights pursuant to *Apprendi* because the court *exposed* him to an extended term of life imprisonment without submitting the "aggravating circumstance" to the jury as an element of his attempted murder charge.[13] *See Apprendi*, 530 U.S. at 490, 494, 120 S.Ct. 2348. The State contends, in response, that there is no *Apprendi* violation given the court's rejection of the opportunity to sentence Burdick to an actual sentence of life imprisonment. Because the court sentenced Burdick to a definite term of forty years, and because the attempted murder statute authorizes the court to sentence a defendant to "any term of years" without a finding of aggravating circumstances, the State urges us to conclude that Burdick properly received a sentence that is in accordance with *Apprendi*.

[¶ 23] We recognize that there is some debate among the courts regarding the scope of *Apprendi*'s holding. Because the petitioner in *Apprendi* did, in fact, receive an enhanced sentence beyond the basic statutory maximum, some courts have declined to expand *Apprendi*'s holding to cases where the defendant is merely exposed to an enhanced sentence, without actually receiving such a sentence.[14] *See,*

---

**12.** The fact is submitted for the jury's determination on the charge of assault on an officer.

**13.** In other words, because he was sentenced on a zero to "life imprisonment" range, rather than on a zero to "a definite period of . . . any term of years" range, Burdick argues that his sentence was drawn from a greater range of punishments, and thus, his constitutional rights were implicated.

**14.** Apprendi pleaded guilty in New Jersey Superior Court to two counts of possession of a firearm (second-degree), and one count of possession of an antipersonnel bomb (third-degree). *Apprendi v. New Jersey*, 530 U.S. 466, 469–70, 120 S.Ct. 2348, 147 L.Ed.2d 435

(2000). Pursuant to New Jersey law, a second-degree offense carried a sentencing range of five to ten years, and a third-degree offense carried a sentencing range of three to five years. *Id.* at 470, 120 S.Ct. 2348. After the plea was accepted and during the sentencing stage, the State requested the sentencing court to impose a higher "enhanced" sentence on one of the second-degree possession of firearm charges on the ground that the offense had been committed with a "biased purpose." *Id.* (citing N.J. STAT. ANN. § 2C:44–3(e) (West Supp. 2000)). The sentencing court held an evidentiary hearing and found by a preponderance of the evidence that Apprendi's actions were undertaken with " 'a purpose to intimidate.' " *Apprendi*, 530 U.S. at 471, 120 S.Ct. 2348. In so concluding, the

e.g., *United States v. Robinson*, 241 F.3d 115, 121 (1st Cir.2001) ("Theoretical exposure to a higher maximum punishment, in and of itself, is not enough."). Other courts, however, have found an *Apprendi* error where a judge's determination of facts merely exposes the defendant to an increase in the statutory maximum sentence, regardless of whether the actual sentence exceeds the original maximum. *See, e.g., United States v. Garcia–Guizar*, 234 F.3d 483, 488–89 (9th Cir.2000) (finding that there was an *Apprendi* error but that the error was harmless).

[¶ 24] We need not determine here whether mere exposure to the higher sentence would violate a defendant's rights, because we conclude that in this unique sentencing circumstance, the sentencing court may have, in fact, sentenced Burdick to an extended term of "life imprisonment."

[¶ 25] Burdick was fifty years old at the time of the sentencing. Although the forty-year sentence was stated in terms of years, the court also explicitly characterized its sentence as "probably a de facto life sentence." In other words, the sentencing court understood its sentence as incarcerating Burdick for a term of "life imprisonment," while giving words to the sentence in terms of years. In this unique and unusual sentencing framework, we construe the results against the State.[15] Thus, juxtaposing the court's term of years against its candid acknowledgement that

the sentence constituted a life sentence for Burdick, we assume for purposes of our analysis that the court sentenced Burdick to an increased sentence beyond the ordinary statutory maximum sentence for attempted murder, in violation of the principles of *Apprendi*.

B. Obvious Error

[¶ 26] Having concluded that an error occurred when the court did not instruct the jury to determine whether Burdick attempted to murder a law enforcement official, we must next determine whether that error violated Burdick's substantial rights. *See State v. Child*, 1999 ME 198, ¶ 7, 743 A.2d 230, 232; *see also Johnson v. United States*, 520 U.S. 461, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997); *State v. Pomerleau*, 363 A.2d 692, 696–98 (Me. 1976); *accord United States v. Duarte*, 246 F.3d 56, 61–62 (1st Cir.2001).

[¶ 27] We first reject Burdick's argument that the error at issue was a "structural error" requiring automatic reversal. Structural error is a " 'defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.' " *Johnson*, 520 U.S. at 468, 117 S.Ct. 1544 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)). The Supreme Court has found "structural errors only in a very limited class of

court rejected Apprendi's constitutional challenge to the statute and sentenced him to twelve years in prison, two years more than the maximum allowable sentence for the possession of a firearm charge. *Id.*

15. In so doing, although we reject Burdick's argument that a forty-year sentence on these facts is, as a matter of law, a life sentence, *see State v. Goodale*, 571 A.2d 228, 229 (Me. 1990), we accept the trial court's assessment that the sentence imposed actually consti-

tutes a life sentence. The court stated in this regard that the Legislature "has embodied a policy judgment that, in fact, crimes of attempted murder on police officers are deserving of greater sentences than might be imposed in other circumstances, and *the sentence that I have imposed is designed to follow that policy* as expressed by the Legislature statutorily." (Emphasis added.) We understand these words to represent the trial court's explanation of the "de facto" life sentence comment.

cases." [16] *Johnson*, 520 U.S. at 468, 117 S.Ct. 1544; *see also Neder v. United States*, 527 U.S. 1, 8–9, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). "Errors of this type are so intrinsically harmful as to require automatic reversal (i.e., 'affect substantial rights') without regard to their effect on the outcome." *Neder*, 527 U.S. at 7, 119 S.Ct. 1827.

[¶ 28] No such error occurred here. *Cf. State v. Warren*, 1998 ME 136, ¶¶ 16–17, 711 A.2d 851, 857–58 (citing *Fulminante*, 499 U.S. at 308, 111 S.Ct. 1246). The omission from jury instructions of a single, discreet factor did not hinder Burdick's right to a fair and speedy trial, impair his opportunity to defend himself, or impair any other protected right during the trial. In sum, the *Apprendi* error "did not recognize or create a structural error that would require per se reversal." *United States v. Nealy*, 232 F.3d 825, 829 (11th Cir.2000).

■ [¶ 29] Having rejected Burdick's claim of structural error, we must determine whether the unpreserved error is "obvious error" requiring that the sentence be set aside. *See* M.R.Crim. P. 52(b). An error is "obvious and reversible if the error affects 'substantial rights' or results in a substantial injustice." *In re Joshua B.*, 2001 ME 115, ¶ 10, 776 A.2d 1240, 1243. Because the claimed error here is of constitutional dimension, we must be convinced beyond a reasonable doubt that the error did not affect Burdick's substantial rights. *See Warren*,

1998 ME 136, ¶ 17, 711 A.2d at 857; *see also Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

■ [¶ 30] The question presented is whether the failure to submit the omitted fact to the jury for its consideration resulted in a deprivation of Burdick's substantial rights.[17] Burdick must convince us that the omission of the instruction " 'when reviewed with the charge as a whole constituted highly prejudicial error tending to produce manifest injustice.' " *Child*, 1999 ME 198, ¶ 7, 743 A.2d at 232 (quoting *State v. Googins*, 640 A.2d 1060, 1062 (Me. 1994)). When the claimed error is the omission of a particular instruction, we will vacate the judgment only if "the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element." *Neder*, 527 U.S. at 19, 119 S.Ct. 1827; *cf. State v. McKeough*, 300 A.2d 755, 761 (Me.1973).

[¶ 31] There is no evidence in the record that "could rationally lead to a contrary finding with respect to the omitted element." *Neder*, 527 U.S. at 19, 119 S.Ct. 1827. On the contrary, the record contains abundant undisputed evidence that Burdick's attempted murder was committed against "a law enforcement officer ... acting in the performance of that officer's duties." 17–A M.R.S.A. § 152(4)(F).

[¶ 32] Officer McFarland, the victim of the attempted murder, testified that on the

---

**16.** *See Sullivan v. Louisiana*, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (erroneous reasonable-doubt instruction to jury); *Vasquez v. Hillery*, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986) (unlawful exclusion of grand jurors of defendant's race); *Waller v. Georgia*, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) (the right to a public trial); *McKaskle v. Wiggins*, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) (the right to self-representation at trial); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792,

9 L.Ed.2d 799 (1963) (a total deprivation of the right to counsel); *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (lack of an impartial trial judge).

**17.** The analysis is similar to that used to determine whether the error was harmless. *See In re Joshua B.*, 2001 ME 115, ¶ 11, 776 A.2d 1240, 1243–44 (noting that a clear distinction between harmless error and obvious error may not be possible).

night in question, he was employed as a "full-time deputy" with "the Hancock County Sheriff's Department," and that he was in uniform and in the performance of his duties while attempting to arrest Burdick. Burdick's own testimony was replete with evidence that the men were law enforcement officers, that they were in uniform, that they intended to arrest him, and that he knew all of those facts. Burdick's attorney repeatedly referred to the victim as "Officer McFarland" throughout the trial, and there was never a question that McFarland was a law enforcement officer in the performance of his duties on the night in question. Moreover, the fact that the victim was a law enforcement officer in the performance of his duties was not disputed by Burdick at the sentencing hearing nor is it in dispute on this appeal. Thus, we are satisfied, beyond a reasonable doubt that the record does not contain evidence that "could rationally lead to a contrary finding with respect to the omitted element." *Neder,* 527 U.S. at 19, 119 S.Ct. 1827; *see also Warren,* 1998 ME 136, ¶ 17, 711 A.2d at 857–58; *State v. York,* 1997 ME 156, ¶ 11, 705 A.2d 692, 695–96; *State v. Diaz,* 681 A.2d 466, 469 (Me.1996) (citing *Chapman,* 386 U.S. at 24, 87 S.Ct. 824); *State v. Hassapelis,* 620 A.2d 288, 293–94 (Me.1993).

[¶ 33] Our conclusion here is consistent with the jury's conviction of Burdick on the charge of "assault on an officer." The indictment, in addition to charging him with attempted murder of Jeffrey McFarland (count I), charged Burdick with "as-sault on an officer" (count III), which required the jury to make a finding that "Jeffrey McFarland" was "a law enforcement officer ... while the said Jeffrey McFarland was in the performance of his official duties," in order to convict Burdick. The court instructed the jury on that element of the charge.[18] Because counts I and III arose out of the same incident (i.e., Burdick's shooting of Officer McFarland), and because the jury convicted Burdick on count III, it is beyond peradventure that the jury would have concluded that the victim of the attempted murder was a law enforcement officer in the performance of his duties, had that fact been properly submitted to the jury as an element of the attempted murder charge.

■ [¶ 34] Because no rational jury would have concluded otherwise on the element that was not submitted to the jury on the attempted murder charge, the absence of that element did not affect Burdick's substantial rights. Accordingly, we conclude that the error in this matter was harmless.

The entry is:

Judgment affirmed.

ALEXANDER, J., with whom CLIFFORD, J., joins concurs and files an opinion.

ALEXANDER, J., with whom, CLIFFORD, J., joins, concurring.

[¶ 35] I concur in the result affirming the sentence. I write separately because,

---

18. The court stated, in relevant parts:

Count III is the charge of assault on an officer with the use of a dangerous weapon, namely a firearm.

A person commits the crime of assault on an officer with the use of a dangerous weapon, namely, a firearm, if, with the use of a dangerous weapon, namely, a firearm, he intentionally, knowingly, or recklessly causes bodily injury to a law enforcement officer, alleged to be Jeffrey McFarland, while the officer is in the performance of his official duties.... The phrase law enforcement officer means any person who by virtue of public employment is vested by law with a duty to maintain public order, to prosecute offenders, to make arrests for crimes ... to perform probation functions or to perform intensive supervision functions.

in my view, the sentencing court properly and without error addressed the reasons for and possible consequences of its sentence.

[¶ 36] *Apprendi* is not implicated in this sentence. As the Court's opinion recognizes, Burdick was sentenced to a term of years within the range appropriate to the attempted murder charge submitted to and decided by the jury. *Apprendi* only requires that a jury decide sentencing factors when those factors serve to increase the maximum possible sentence that could be imposed or the category of the crime upon which sentencing will be imposed. *Apprendi* does not prevent the State from arguing or the court from considering uncharged sentencing enhancement factors as aggravating circumstances, as long as the sentence imposed is within the range appropriate to the crime as charged and convicted.

[¶ 37] Thus, for example, after an aggravated assault conviction, 17–A M.R.S.A. § 208 (1983) (Class B), a sentencing court should not ignore evidence that the defendant intentionally or knowingly caused serious bodily injury to the victim with the use of a dangerous weapon, acts which, if charged, would raise the sentencing classification to a Class A crime.[19] We would want the sentencing court to consider such evidence as an aggravating factor. In imposing the sentence, the court would be limited to the ten-year range of a Class B crime rather than the forty-year range of a Class A crime, although we would expect that the sentence within the Class B range would be higher because of the uncharged enhancement factors shown by the evidence. Such an enhancement within the

range of possible sentences for the lesser crime is not error, and it does not become error if the court states that the reasons for the sentence include the evidence of the enhancement factor. We want to encourage trial courts to state the reasons and consequences that underlie their sentencing decisions. An opinion that holds that reference to an uncharged sentence enhancement factor and consideration of that factor in sentencing is error will discourage trial courts from openly discussing their sentencing considerations.

[¶ 38] In this case the trial court conducted a proper sentencing hearing. It then stated on the record its reasoning for imposing the sentence, and the possible consequences of its sentence. This is not error. Discussion of the reasons for and consequences of sentences is necessary to properly impose a sentence of imprisonment with the many factors and consequences that must be addressed pursuant to 17–A M.R.S.A. §§ 1151, 1252, 1252–B, and, particularly, 1252–C (1983 & Supp. 2000), which calls for articulation of a three-step sentencing consideration. *See State v. Hewey*, 622 A.2d 1151, 1154–55 (Me.1993).

[¶ 39] The sentence the court imposed, forty years, was within the range allowed for an attempted murder conviction as it was pled and as it was found by the jury. The law, articulated in *Apprendi* or otherwise, requires no more.

[¶ 40] The fact that a sentence may be a "de facto" life sentence does not change its legality.[20] In that aspect, this case is on all fours with *State v. Goodale*, 571 A.2d

---

19. Elevated aggravated assault is a Class A crime if the State pleads and proves that the defendant intentionally and knowingly caused serious bodily injury with the use of a dangerous weapon. 17–A M.R.S.A. § 208–B (Supp. 2000).

20. If a "de facto" life sentence renders a sentence under a term of years statute illegal, then the same forty-year sentence that is legal for a twenty-year-old would be illegal for a fifty-year-old.

228 (Me.1990). Goodale was convicted of murder. *Id.* at 228. At sentencing, the trial judge "did acknowledge that defendant's case lacked the aggravating circumstances that would justify a life sentence .... " *Id.* at 229. The court then imposed a seventy-five-year sentence. *Id.* The defense asserted on appeal that the trial court had imposed an illegal "de facto" life sentence. *Id.* We rejected the assertion and stated that:

> [a]n inappropriate sentence is not necessarily an illegal sentence. Although it is possible that a sentence for a term of years could be the functional equivalent of a life sentence, we are not faced with such a situation in this case. The sentence before us, when objectively reviewed, is not demonstrably the equivalent of a life sentence. The illegality of the sentence does not appear clearly on the face of the record.

*Id. See also State v. Sweet*, 2000 ME 14, ¶ 36 n. 8, 745 A.2d 368, 377 n. 8 (Calkins, J., dissenting) (characterizing the defendants' sentences as "de facto life sentences").

[¶ 41] For *Apprendi* issues to be generated, the sentence would have to be illegal. The sentence is not illegal but fully appropriate within the range of the trial court's discretion based on the charged and convicted offense. Thus, I would not hold that the sentence was error.