2005 ME 84

**STATE of Maine**

v.

**Adam P. MILLER.**

Supreme Judicial Court of Maine.

Submitted On Briefs: June 2, 2005.

Decided: June 29, 2005.

1997 ME 141, ¶ 27, 697 A.2d 73, 81.

G. Steven Rowe, Attorney General, James M. Cameron, Asst. Atty. Gen., Lara Nomani, Asst. Atty. Gen., Augusta, for State.

Daniel C. Purdy, Esq., Waldoboro, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

DANA, J.

[¶ 1] Adam P. Miller appeals from a sentence of four years, all but nine months suspended, imposed by the Superior Court (Lincoln County, *Humphrey, C.J.*) following a judgment entered after a jury convicted Miller of importation of heroin (Class C), pursuant to 17–A M.R.S.A. § 1118 (Supp.2004). Miller argues that his sentence violated the Sixth Amendment of the United States Constitution because the court, and not a jury, determined that he had been involved in additional trips to Massachusetts for the purpose of obtaining heroin and bringing it to Maine. We affirm the sentence.

## I. BACKGROUND

[¶ 2] In January 2004, a grand jury indicted Miller on two drug-related counts: (1) importation of heroin (Class C), 17–A M.R.S.A. § 1118; and (2) trafficking in heroin (Class B), 17–A M.R.S.A. § 1103 (Supp.2004). The indictment charged that Miller intentionally brought heroin into the State on or about November 18, 2003. Miller entered a plea of not guilty to the charges.

[¶ 3] At Miller's jury trial, the State called several law enforcement officers. They testified that Miller, his girlfriend Tammy Ames, and his sister Tanya Miller were known heroin addicts. When Waldoboro police officers spotted the three driv-

ing south on the morning of November 18, 2003, they believed the trio was driving to Massachusetts to purchase drugs. Officers from the Lincoln County Sheriff's Office obtained a search warrant for Tanya's residence, which they executed after the suspects returned to the residence that evening. During the search, detectives reported finding a substance resembling heroin, spoons, firearms, marijuana, and other drug paraphernalia.

[¶ 4] Lincoln County Detective Sergeant Kenneth Hatch testified that he interviewed Miller following the search. Hatch testified that Miller told him the group had driven to Fairhaven, Massachusetts, where Tanya purchased a gram of heroin. Hatch also testified that Miller said his sister was traveling to Massachusetts two or three times a week to buy heroin, and that Miller accompanied her on some, but not all, of those trips.

[¶ 5] After the State rested its case, Miller testified that the purpose of the trip to Massachusetts on November 18 was to visit his sister's fiancé. He testified that while in Massachusetts he and his sister were separated for an hour or two and he did not see her purchase any heroin during the trip. On cross-examination, Miller acknowledged previously using heroin. He also testified that he might have told Hatch his sister may have been traveling to Massachusetts to buy heroin. He testified, however, that he told Hatch he was *not positive* about this fact.

[¶ 6] The defense rested without calling another witness. The jury returned a verdict finding Miller guilty on the importation count, but not guilty on the trafficking count. The court directed that judgment be entered on the verdict, and then proceeded to sentencing.

[¶ 7] The prosecution requested a sentence of four years, with all but six to nine

months suspended. The defense sought a sentence of eighteen months to two years, with all but three months suspended. Miller limited his allocution to a brief statement in which he emphasized that he was always cooperative with the police.

[¶ 8] The court, following the three-step sentencing procedure established in *State v. Hewey*, 622 A.2d 1151, 1154–55 (Me. 1993), and codified at 17–A M.R.S.A. § 1252–C (Supp.2004), set a basic sentence for the offense at three years. In doing so, the court emphasized the insidious nature of heroin and the circumstances involved in Miller's case:

> I think we all agree that heroin is a very serious and insidious drug compared to all of the other types of drugs that are out there and which form the basis of this offense, the dosage circumstance, the possible 50 to 100 dozen doses in fact could be made available when cut from the rock that we saw in this case and provided to the community and the fact that there were other episodes of trips to Massachusetts with your sister.

[¶ 9] The court then identified aggravating factors: Miller's prior convictions for theft and providing false information to police, and the lack of any remorse. The court determined that these factors outweighed any mitigating factors and that an appropriate maximum sentence was four years. Finally, the court determined that it would suspend all but nine months of the sentence, and impose a probation period of three years. Miller filed a timely notice of appeal.

## II. DISCUSSION

 [¶ 10] Miller argues that because his sentence was affected by the court's determination that he made other trips to Massachusetts with his sister, the sentencing court violated his Sixth Amendment right to a jury determination of facts essential to a sentence. Miller argues that the United States Supreme Court's holdings in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004); and *United States v. Booker*, 543 U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), required that a jury determine whether Miller made prior trips.

 [¶ 11] As a preliminary matter, we note that Miller did not raise any Sixth Amendment objections during his sentencing.[1] We review matters not preserved before the sentencing court for obvious error. *State v. Burdick*, 2001 ME 143, ¶ 13, 782 A.2d 319, 324. "An error is 'obvious and reversible if the error affects "substantial rights" or results in a substantial injustice.'" *Id.* ¶ 29, 782 A.2d at 328 (quoting *In re Joshua B.*, 2001 ME 115, ¶ 10, 776 A.2d 1240, 1243). This case does not require an obvious error analysis, however, because we conclude that there was no error at all.

[¶ 12] In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime *beyond the prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348 (emphasis added). In *Blakely*, the Supreme Court clarified that the "statutory maximum" for *Apprendi* purposes was not simply the longest possible term authorized by law, but instead the "maximum sentence a judge may impose *solely on the basis of the facts reflected in the*

---

1. Miller was sentenced November 8, 2004, more than four months after the Supreme Court issued its noteworthy decision in *Blake-* *ly v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

jury verdict or admitted by the defendant." *Blakely*, 542 U.S. at ——, 124 S.Ct. at 2537 (emphasis in original).

[¶ 13] The statutory maximum for violating 17–A M.R.S.A. § 1118, a Class C offense, is a "definite period not to exceed 5 years." 17–A M.R.S.A. § 1252(2)(C) (1983). Because Miller was sentenced to four years, with all but nine months suspended, his sentence did not violate the Sixth Amendment. As Justice Scalia noted in *Blakely*:

> indeterminate sentencing schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal *right* to a lesser sentence—and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned.

*Blakely*, 542 U.S. at ——, 124 S.Ct. at 2540 (emphasis in original).

[¶ 14] Upon his conviction, Miller had no legal right to a sentence of less than five years. The court's finding that he engaged in other trips to Massachusetts with his sister is an example of judicial factfinding in the exercise of sentencing discretion. Section 1252(2)(C) did not require any particular finding of fact, other than conviction, for a court to impose a sentence of up to five years. Because Miller's sentence of four years, all but nine months suspended, is less than the statutory maximum of five, Miller's sentencing was constitutional. *See Booker*, 543 U.S. at ——, 125 S.Ct. at 750 (emphasizing that judges have the authority to exercise broad discretion to select a "specific sentence within a defined range").

The entry is:

Judgment affirmed.