1997 ME 174

**STATE of Maine**

v.

**Joseph JACKSON and Jeremiah Moore.**

Supreme Judicial Court of Maine.

Argued June 13, 1997.

Decided July 31, 1997.

Andrew Ketterer, Attorney General, Nancy Torresen, Asst. Atty. Gen. (orally), Augusta, for State.

David L. Brandt (orally), Windham, for Joseph Jackson.

Stuart W. Tisdale, Jr. (orally), Portland, for Jeremiah Moore.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, RUDMAN, and LIPEZ, JJ.

ROBERTS, Justice.

[¶ 1] Joseph Jackson appeals from the judgment of conviction entered in the Superior Court (Cumberland County, *Saufley, J.*) on a jury verdict finding him guilty of manslaughter. Jeremiah Moore appeals from the judgment of conviction entered in the Superior Court (Cumberland County, *Delahanty, J.*) on a jury verdict finding him guilty of murder. Although tried separately, both cases stem from the same incident and have been consolidated on appeal. Jackson argues the court erroneously admitted certain evidence and miscalculated his sentence. Moore argues the court committed several evidentiary errors. We affirm both judgments and Jackson's sentence.

[¶ 2] In the early morning hours of Sunday, April 16, 1995, Juan Carlos Rodriguez was shot and killed in Lewiston. For about three weeks prior to the shooting, Rodriguez had been dealing in crack cocaine in an apartment on Knox Street. The day before the killing, Jackson and Moore traded some marijuana with Rodriguez in return for a quantity of cocaine. Conflict developed among the parties when Rodriguez demanded the return of some of the cocaine because he felt he had been shortchanged. The conflict was resolved only when another person contributed some of his own cocaine to settle the dispute. Later that evening, Jackson and Moore smoked crack cocaine on at least two occasions. Nancy Dyment, who was with Jackson and Moore that night, testified that they spoke of "getting ripped off by a Dominican" and taking revenge.

[¶ 3] After midnight Jackson and Moore drove to the apartment where Rodriguez was dealing. En route they picked up two more men. They parked the car and three of the men entered the apartment building. Alfred Palmer, who occupied the apartment where Rodriguez was dealing, allowed the men inside. Sometime after entering the apartment, Jackson brandished a handgun and moved toward Rodriguez, who was in the kitchen. Moore was behind Jackson at this time. A scuffle ensued. Rodriguez lunged at Jackson with a sharp object. Jackson fired three or four shots into Rodriguez. An additional shot was fired from behind Jackson. Rodriguez died as a result of the gunshot wounds.

[¶ 4] Jackson and Moore were charged with murder and obtained separate trials. Jackson was acquitted of murder and convicted of the lesser included offense of manslaughter (Class A). 17–A M.R.S.A. § 203 (Supp.1996). Moore was convicted of murder. 17–A M.R.S.A. § 201(1)(A) (1983). This consolidated appeal followed.

## I.

### Nancy Dyment's Testimony at the Jackson Trial

[¶ 5] Before the start of Jackson's trial, the court granted his motion to sequester the witnesses. Prior to Nancy Dyment's testimony, Jackson became concerned about conversations Dyment had outside the courtroom with another witness, Wendy Blouin, who had testified earlier the same day at Moore's trial. When questioned in the absence of the jury, Dyment said the conversation lasted about five minutes and did not involve any discussion of the substance of Blouin's earlier testimony. The court denied Jackson's motion to exclude Dyment's testimony on the ground that she violated the sequestration order.

 [¶ 6] Jackson contends the court erred by denying his motion to exclude Dyment's testimony. We disagree. The limited consequence of a sequestration order, pursuant to M.R.Evid. 615, is that witnesses are excluded from the courtroom until they have finished testifying. *State v. Bennett*, 416 A.2d 720, 726–27 (Me.1980). "The primary function of sequestration is to prevent one witness from hearing the testimony of another so as to be able to conform his own testimony to that given by the other, especially that given in response to cross-examination." *State v. Cloutier*, 302 A.2d 84, 90 (Me.1973). A sequestration order "is not a general prohibition against witnesses talking about the case." *Bennett*, 416 A.2d at 727. In the absence of any request for more stringent restrictions to be imposed by the court, the sequestration order in the instant case did no more than exclude witnesses from the courtroom until they were finished testifying. Thus the conversation that Dyment described between herself and Blouin was not a violation of the order.

## II.

### Testimony at Jackson's Trial Concerning a Robbery Plan

 [¶ 7] Geoffrey Motil testified that two and one-half weeks before the killing he and Jackson, along with Moore and a fourth person, staked out a house in Lewiston where crack cocaine was being sold. Motil testified that the group planned to enter the house

with guns and rob a Dominican crack dealer they believed to be inside. Motil thought he heard someone mention that the dealer's name was Carlos, which was one of the names used by Rodriguez. The group subsequently abandoned its plan.

[¶ 8] Jackson argues that Motil's testimony was character evidence inadmissible pursuant to M.R.Evid. 404(b).[1] We disagree. Evidence of prior bad acts is not admissible to prove that a person acted on a particular occasion in conformity with his past behavior. Such evidence may be admissible, however, when offered for another purpose such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *See* M.R.Evid. 404 advisers' note. Motil's testimony was admissible because it tended to establish that Jackson planned to rob Rodriguez when he entered the apartment on Knox Street, thus showing Jackson's intent at the time of the killing. Consequently, the testimony had a legitimate purpose rather than the illegitimate suggestion that Jackson had a propensity to commit crimes.

[¶ 9] Moreover, we are not persuaded by Jackson's argument that the prejudicial effect of Motil's testimony rendered it inadmissible pursuant to M.R.Evid. 403.[2] The trial court has broad discretion to weigh the relevance of evidence against the danger of unfair prejudice to the defendant. *See State v. Case*, 672 A.2d 586, 588 (Me.1996) (decision to admit or exclude evidence is reviewed for abuse of discretion because the question of admissibility frequently involves weighing probative value against considerations militating against admissibility); Field & Murray, Maine Evidence § 403.1, at 99 (4th ed. 1997). In this context, "prejudice" means more than simply damage to the defendant's cause; the rule is intended to proscribe evidence that has an " 'undue tendency to move the tribunal to decide on an improper basis, commonly, though not always, an emotional one.' " *State v. Ardolino*, 1997 ME 141, ¶ 10, 697 A.2d 73 (quoting *State v. Hurd*, 360 A.2d 525, 527 n. 5 (Me.1976)). We conclude that the court acted within its discretion in ruling that the significant probative value of Motil's testimony was not outweighed by the risk of unfair prejudice to Jackson.

## III.

### *Jackson's Sentence*

[¶ 10] In sentencing Jackson the court set a basic period of incarceration of 25 years and arrived at a final sentence of 30 years based on the presence of aggravating factors. This basic period of incarceration falls within the extended sentencing range for Class A crimes. In 1987 the Legislature increased the maximum sentence for Class A crimes from 20 to 40 years. P.L.1987, ch. 808 (codified at 17-A M.R.S.A. § 1252(2)(A) (Supp. 1996)). In *State v. Lewis*, 590 A.2d 149, 151 (Me.1991), we concluded that the change was intended to create a 20- to 40-year sentencing range reserved for only the "most heinous and violent crimes committed against a person."

[¶ 11] Jackson argues the court erred by selecting a basic period of incarceration within the extended sentencing range. We disagree. In deciding whether a sentence in the extended range is consistent with the principles set forth in *Lewis*, we look at the entire record. As noted by the trial court, drugs and guns are a lethal combination, and Jackson chose to indulge in both. The evidence also suggests Jackson was motivated, at least in part, by a desire for revenge, and planned to rob Rodriguez, a known cocaine dealer. Although not dispositive, the court may consider that manslaughter, unlike some

---

1. Rule 404(b) provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith."

2. Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

other Class A crimes, is a crime that results in the death of a human being. In these circumstances, we cannot say the court erred by finding that Jackson's crime was among the "most heinous and violent crimes committed against a person."

## IV.

### Alvin Houston's Testimony at the Moore Trial

[¶ 12] Alvin Houston testified that after the shooting on April 16, Jackson and Moore came to his apartment and Moore said, "we smoked him, man, we smoked that bastard," referring to Rodriguez. In late April 1995, Houston and Moore shared a cell at the Androscoggin County jail, and shortly thereafter Houston gave a statement to the police concerning the evening of the shooting. On cross-examination, Moore made an offer of proof that Houston told the police he thought Moore was innocent. The court, however, refused to permit Moore to question Houston in that regard, concluding that the issue of Moore's guilt or innocence was solely a matter for the jury to resolve. Moore objected to the court's ruling.

[¶ 13] Moore contends the court erred by excluding Houston's testimony about his statement to the police. The decision to admit or exclude evidence is within the discretion of the trial court. *State v. Case*, 672 A.2d at 588. We conclude the court exceeded the bounds of its discretion by excluding the proffered testimony. Houston's prior statement that he thought Moore was innocent was relevant to the purpose of impeaching his testimony; the statement tended to show Houston believed Moore did not participate in the killing, which was at odds with Houston's testimony. *See State v. Marr*, 551 A.2d 456, 458 (Me.1988) (evidence of a prior inconsistent statement is proper impeachment pursuant to M.R.Evid.607). We conclude, however, that the exclusion of Houston's testimony was harmless error because it would have added little to the thorough impeachment to which he was otherwise already exposed. *State v. Pelletier*, 673 A.2d

1327, 1330 (Me.1996) (we will not vacate a judgment for an error objected to at trial so long as it is highly probable that the jury's determination of guilt was unaffected by the error). Houston conceded he originally did not tell the police about Moore's incriminating statement. He admitted his testimony was motivated, at least in part, by a desire to obtain leniency with regard to outstanding state and federal drug charges. He acknowledged he had been convicted of numerous crimes and had been smoking crack cocaine all day prior to his encounter with Moore. In light of all this evidence, the probative value of Houston's testimony concerning his prior statement to the police was negligible.

## V.

### The In–Court Identification of Moore

[¶ 14] While many witnesses discussed Moore by name, none identified him in the courtroom prior to the close of the State's case. Over Moore's objection, the court allowed the State to reopen its case for the purpose of identifying him. The State then recalled as a witness State Police Detective Geoffrey Cummings, who testified that he worked on the case and had come to know Moore in connection with his investigation. Cummings then identified Moore for the record.

[¶ 15] Moore contends that Cummings's identification was insufficient because he merely investigated the killing and was not an eyewitness to the relevant events described by the other witnesses. We disagree. Identification of the accused is an issue of fact that is properly submitted to the jury. *State v. Guptill*, 481 A.2d 772, 775 (Me.1984). The State may establish the identity of the accused through purely circumstantial evidence. *Id.* In the instant case, the testimony of the witnesses, who knew Moore personally, even without the in-court identification by Cummings, presented the jury with sufficient evidence on which to decide the issue of Moore's identity.

[¶ 16] Two other issues raised by Moore do not merit discussion.

The entry is:

As to Joseph Jackson:

Judgment affirmed. Sentence affirmed.

As to Jeremiah Moore:

Judgment affirmed.