2011 ME 96

## STATE of Maine

v.

## Malcolm Bruce LaVALLEE–DAVIDSON.

Supreme Judicial Court of Maine.

Argued: April 14, 2011.

Decided: Aug. 25, 2011.

Verne E. Paradie, Jr., Esq. (orally), Trafton & Matzen, LLP, Auburn, ME, for Malcolm Bruce Lavallee–Davidson.

William J. Schneider, Attorney General, Donald W. Macomber, Asst. Atty. Gen. (orally), Office of Attorney General, Augusta, ME, for the State of Maine.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

SAUFLEY, C.J.

[¶ 1] Malcolm Bruce LaVallee–Davidson killed a man by putting a gun to his head and pulling the trigger during consensual sexual activity. At trial, LaVallee–Davidson argued that he did not know that the gun was loaded. After a jury found him guilty of manslaughter (Class A), 17–A M.R.S. § 203(1)(A) (2010),[1] the court entered a judgment of conviction in the Unified Criminal Docket (Cumberland County, *Crowley, J.*). In this appeal, LaVallee–Davidson argues that the court committed obvious error in its jury instructions and that the evidence was insufficient for a jury to find beyond a reasonable doubt that he caused the death of the victim either recklessly or with criminal negligence. We affirm the judgment.

I. FACTUAL AND PROCEDURAL HISTORY

[¶ 2] LaVallee–Davidson was charged by indictment with manslaughter (Class A), 17–A M.R.S. § 203(1)(A), pleaded not guilty, and proceeded to trial. Viewing the evidence in the light most favorable to the jury's verdict, *see State v. Filler*, 2010 ME 90, ¶ 24, 3 A.3d 365, 372, the following facts were established at trial.

[¶ 3] On Friday, April 17, 2009, LaVallee–Davidson went to the victim's home in South Portland to engage in consensual sexual activity with the victim and another man. He brought with him three guns and ammunition for each gun. Throughout the evening, the men ingested or inhaled a combination of alcohol and drugs and used LaVallee–Davidson's guns for various sexual purposes. The activity culminated in LaVallee–Davidson placing a gun to the head of the victim and twice pulling the trigger without first checking to see if the gun was loaded. The victim died of a single gunshot wound to the head after LaVallee–Davidson pulled the trigger the second time.

[¶ 4] Following the shooting, LaVallee–Davidson twice said, "I think I killed him." LaVallee–Davidson placed a blanket on the victim, he and the other man wiped down various items, and LaVallee–Davidson placed some items in the trash bucket. LaVallee–Davidson left and took with him his guns, ammunition, and personal items, as well as the victim's laptop and cell phone.

[¶ 5] After they left the victim's house, the other man told LaVallee–Davidson, both by phone and electronically, that the death needed to be reported. LaVallee–Davidson responded that he was not ready to do so and told the other man that he wanted to say that the victim had killed himself. The other man refused to corroborate that story and called the South Portland Police Department to report the shooting.

[¶ 6] LaVallee–Davidson later turned over to the police the guns, the ammunition, the victim's computer, and the victim's cell phone. He told the police that he had thrown the bullet casing from the shooting out his car window, and the police never recovered the casing. The police determined that LaVallee–Davidson's DNA was included in the mixture of DNA found on two of the guns and identified his DNA on several unfired cartridges.

1. 17–A M.R.S. § 203 (2010) states, in relevant part:
1. A person is guilty of manslaughter if that person:

A. Recklessly, or with criminal negligence, causes the death of another human being. Violation of this paragraph is a Class A crime.

[¶ 7] Although LaVallee–Davidson did not testify at trial, the jury viewed a video recording of an interview between LaVallee–Davidson and two police detectives that occurred on Sunday morning, April 19, 2009. During the interview, LaVallee–Davidson told the detectives that, just before the shooting, the victim told him that he wanted to play "roulette" with one of the guns.[2] LaVallee–Davidson stated that he "made sure everything was unloaded," went to the bathroom, returned, put the gun to the victim's head, and twice pulled the trigger at the victim's request. LaVallee–Davidson also made inconsistent statements to the police regarding the location of the guns and the ammunition during these events.

[¶ 8] At the conclusion of the trial, the court instructed the jury on the states of mind necessary to prove manslaughter and included the following specific instructions on evidence of mistake of fact:

In determining whether the necessary mental state, either recklessness or criminal negligence, has been proven beyond a reasonable doubt, you should consider any evidence of mistake of fact because evidence of a mistake of fact may raise a reasonable doubt as to the existence of a required culpable state of mind, in this case either recklessness or criminal negligence.

Although LaVallee–Davidson initially objected to this instruction, he withdrew his objection and agreed to the instruction.

[¶ 9] The jury returned a guilty verdict on the single count of manslaughter. *See* 17–A M.R.S. § 203(1)(A). The court sentenced LaVallee–Davidson to fifteen years' imprisonment, with all but ten years suspended and three years of probation, and required him to pay $7,135 in restitution and $25 to the Victims' Compensation Fund, *see* 5 M.R.S. § 3360–I (2010), and to forfeit the firearm used. LaVallee–Davidson timely appealed.[3]

## II. DISCUSSION

### A. Mistake of Fact

 [¶ 10] To convict LaVallee–Davidson of the charged crime of manslaughter, the State had the burden of establishing beyond a reasonable doubt that he acted either recklessly[4] or with criminal negligence.[5] 17–A M.R.S. § 203(1)(A); *see* 17–

---

**2.** The other man testified that he heard no discussion of, and did not participate in, any form of "roulette."

**3.** The Sentence Review Panel denied LaVallee–Davidson leave to appeal form his sentence.

**4.** 17–A M.R.S. § 35 (2010) states, in relevant part:

 **3.** "**Recklessly.**"

 **A.** A person acts recklessly with respect to a result of the person's conduct when the person consciously disregards a risk that the person's conduct will cause such a result.

 . . . .

 **C.** For purposes of this subsection, the disregard of the risk, when viewed in light of the nature and purpose of the person's conduct and the circumstances known to the person, must involve a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation.

**5.** 17–A M.R.S. § 35 states, in relevant part:

 **4.** "**Criminal negligence.**"

 **A.** A person acts with criminal negligence with respect to a result of the person's conduct when the person fails to be aware of a risk that the person's conduct will cause such a result.

 . . . .

 **C.** For purposes of this subsection, the failure to be aware of the risk, when viewed in light of the nature and purpose of the person's conduct and the circumstances known to the person, must involve a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation.

A M.R.S. § 35(3), (4) (2010). LaVallee–Davidson argues that the court failed to properly instruct the jury on his mistake of fact defense as it relates to these two mental states. *See* 17–A M.R.S. §§ 35(3), (4), 36 (2010).

[¶11] "No area of the substantive criminal law has traditionally been surrounded by more confusion than that of ignorance or mistake of fact or law." 1 Wayne R. LaFave, *Substantive Criminal Law* § 5.6(a) at 394 (2d ed. 2003). That confusion is evident in this matter, where LaVallee–Davidson argues that his mistak-

en belief that the gun was empty of bullets gave rise to an *affirmative defense* to the charge of manslaughter based on a mistake of fact.[6] He argues that the jury instruction regarding mistake of fact was deficient because the instruction did not place the burden of disproving the defense on the State and because the instruction failed to explain how the jury should consider the defense.[7] LaVallee–Davidson's argument, however, misapprehends the application of mistake of fact as a defense to the crime of manslaughter. *See* 17–A M.R.S. § 36;[8] *see also* 17–A · M.R.S. 203(1)(A).

6. The confusion regarding the nature of the defense is understandable. There is at least one inaccurate version of *State v. Collin*, 1999 ME 187, ¶¶ 11–12, 741 A.2d 1074, 1077–78, in the available on-line electronic research databases. That version leaves the reader with the misimpression that mistake of fact generally is an affirmative defense, and it suggests that the State must disprove an affirmative defense beyond a reasonable doubt. To be clear, notwithstanding the words that appear in that version of *Collin*, paragraphs eleven and twelve of the accurate version of *Collin* do not refer to an affirmative defense, *see Collin*, 1999 ME 187, ¶¶ 11–12, 741 A.2d at 1077–78 (as correctly reported in the Atlantic Reporter and in the Westlaw electronic database), and "[w]here the statute explicitly designates a matter as an 'affirmative defense,' the matter so designated must be proved by the defendant by a preponderance of the evidence," 17–A M.R.S. § 101(2) (2010); *see* 17–A M.R.S. § 36(4) (2010).

7. LaVallee–Davidson concedes that he did not object to the instruction, but he contends that the instructions as a whole constituted obvious error that produced a manifest injustice. *See* U.C.D.R.P.-Cumberland County 30(b) ("No party may assign as error the giving or the failure to give an instruction unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds of the objection."); U.C.D.R.P.-Cumberland County 52(b) ("Obvious errors or defects affecting substantial rights may be noticed although they were not brought to the attention

of the court."); *State v. Burdick*, 2001 ME 143, ¶ 13, 782 A.2d 319, 324.

8. 17–A M.R.S. § 36 (2010) states:

1. Evidence of ignorance or mistake as to a matter of fact or law may raise a reasonable doubt as to the existence of a required culpable state of mind.

2. Ignorance or mistake as to a matter of fact or law is a defense only if the law provides that the state of mind established by such ignorance or mistake constitutes a defense.

3. Although ignorance or mistake would otherwise afford a defense to the crime charged, the defense is not available if the defendant would be guilty of another crime had the situation been as the defendant supposed.

4. It is an affirmative defense if the defendant engages in conduct that the defendant believes does not legally constitute a crime if:

A. The statute violated is not known to the defendant and has not been published or otherwise reasonably made available prior to the conduct alleged; or

B. The defendant acts in reasonable reliance upon an official statement, afterward determined to be invalid or erroneous, contained in:

(1) A statute, ordinance or other enactment;

(2) A final judicial decision, opinion or judgment;

(3) An administrative order or grant of permission; or

(4) An official interpretation of the public officer or body charged by law with re-

[¶ 12] The error in LaVallee–Davidson's argument stems from a misunderstanding of the three broad categories of defenses that may negate criminal liability, and of the burdens placed on the State or defendant as a result of these defenses.[9] In the first category, which is not technically a "defense," a defendant in a criminal trial argues that there is a failure of proof by the State, that is, that the State has failed to meet its burden to establish beyond a reasonable doubt one or more of the elements of the crime charged. When arguing a mistake of fact pursuant to 17–A M.R.S. § 36(1), the defendant asserts mistake of fact to "raise a reasonable doubt as to the existence of a required culpable state of mind." *Id.; see* 2 Wayne R. LaFave, *Substantive Criminal Law* § 9.1(a)(1) at 5–6 (2d ed. 2003). In such circumstances, the defendant bears no ultimate burden of proof, *see* Alexander, *Maine Jury Instruction* Manual § 6–47 at 6–64 (4th ed. 2011), and, as the court instructed here, the State's burden to prove each element beyond a reasonable doubt is not changed by the defense.

[¶ 13] In the second category, the defendant raises a defense, such as a justification or an excuse, that requires the State to *disprove* certain facts beyond a reasonable doubt in addition to meeting its burden of establishing each element of the crime beyond a reasonable doubt. *See id.;* 17–A M.R.S. § 101(1) (2010) (requiring State to disprove beyond a reasonable doubt expressly designated defenses, exceptions, exclusions, or authorizations "in

issue as a result of evidence admitted at the trial that is sufficient to raise a reasonable doubt on the issue"); *see also State v. Thurston,* 2009 ME 41, ¶ 9, 969 A.2d 906, 909. A defendant putting forward such a defense regarding a state of mind may do so only pursuant to 17–A M.R.S. § 36(2) and "only if the law provides that the state of mind established by such … mistake constitutes a defense." 17–A M.R.S. § 36(2); *see, e.g.,* 17–A M.R.S. § 254(2) (2010) (stating that it is a defense to prosecution of sexual abuse of minors "that the actor reasonably believed the other person is at least 16 years of age"). In such circumstances, the State would then be required to disprove evidence of mistake of fact beyond a reasonable doubt if the defendant raised evidence at trial sufficient to generate the issue. *See* 17–A M.R.S. § 101(1); *see also Glidden,* 487 A.2d at 644.

[¶ 14] In the third category are affirmative defenses. The Legislature has expressly designated certain affirmative defenses to some crimes. *See, e.g.,* 15 M.R.S. § 1092(2) (2010) (affirmative defense to violation of condition of release); 17 M.R.S. § 1033(3) (2010) (affirmative defense to the crime of animal fighting); 17–A M.R.S. § 255–A(1)(Q), (R) (2010) (affirmative defenses to unlawful sexual contact); 17–A M.R.S. § 1105–C(1)(K), (L), (3) (affirmative defenses to aggravated furnishing of scheduled drugs); *see also State v. Okie,* 2010 ME 6, ¶ 16, 987 A.2d 495, 500 (addressing the affirmative defense of lack

---

sponsibility for the interpretation, administration or enforcement of the statute defining the crime. This subsection does not impose any duty to make any such official interpretation.

5. A mistaken belief that facts exist which would constitute an affirmative defense is not an affirmative defense, except as otherwise expressly provided.

9. In at least one publication, defenses to criminal liability have been classified according to five types of defenses: failure of proof defenses, offense modification defenses, justifications, excuses, and nonexculpatory defenses. 2 Wayne R. LaFave, *Substantive Criminal Law* § 9.1(a) at 4–9 (2d ed. 2003). We do not parse the varieties of defenses this finely in our review of Maine criminal law today.

of criminal responsibility by reason of insanity). When a defendant raises an affirmative defense, the *defendant* bears the burden of proving the facts necessary to the affirmative defense by a preponderance of the evidence. 17–A M.R.S. § 101(2) (2010); *see State v. Christen,* 2009 ME 78, ¶ 12, 976 A.2d 980, 984–85. Evidence of mistake of fact or law may constitute an affirmative defense only if "the defendant engages in conduct that the defendant believes does not legally constitute a crime" and if the State did not properly communicate the law to the public. 17–A M.R.S. § 36(4).

[¶ 15] Here, the criminal statute governing the crime charged, manslaughter, does not provide "that the state of mind established by [a] … mistake constitutes a defense." 17–A M.R.S. § 36(2); *see* 17–A M.R.S. § 203(1)(A). Therefore, LaVallee–Davidson could not assert mistake of fact as a defense designated in the criminal statute establishing the offense, and the State was not required to disprove the mistake-of-fact defense. *See* 17–A M.R.S. § 36(2). Further, LaVallee–Davidson could not assert mistake of fact or law as an affirmative defense pursuant to 17–A M.R.S. § 36(4) (governing improper communication of a law to the public), which he then would have had to prove by a preponderance of the evidence. *See* 17–A M.R.S. § 101(2).

[¶ 16] Rather, LaVallee–Davidson's only available option on this issue was to argue a mistake of fact in an effort to "raise a reasonable doubt as to the existence of a required culpable state of mind." 17–A M.R.S. § 36(1). His assertion of mistake of fact was a failure-of-proof defense and, accordingly, the State did not have the burden of *disproving* evidence of mistake of fact raised by LaVallee–Davidson. *See* 17–A M.R.S. §§ 36(1), (2), 203(1)(A); Alexander, *Maine Jury Instruction Manual* § 6–47 at 6–64. The State instead had the burden to prove recklessness or criminal negligence beyond a reasonable doubt notwithstanding any evidence of mistake of fact. "Instead of speaking of … mistake of fact … as a defense, it would be just as easy to note simply that the defendant cannot be convicted when it is shown that he does not have the mental state required by law for commission of that particular offense." 1 LaFave, *Substantive Criminal Law* § 5.6(a) at 395; *see State v. Sexton,* 160 N.J. 93, 733 A.2d 1125, 1132 (1999) (stating that "evidence of an actor's mistaken belief relates to whether the State has failed to prove an essential element of the charged offense beyond a reasonable doubt").[10]

[¶ 17] LaVallee–Davidson argued to the jury that he did not possess the required mental state of recklessness or criminal negligence because he did not know that his gun contained bullets before he pulled the trigger. At the conclusion of the trial, the court instructed the jury without objection that it "should consider any evidence of mistake of fact because

---

10. Although LaVallee–Davidson attempts to support his claim of error by citing to *State v. Sexton,* 160 N.J. 93, 733 A.2d 1125, 1132 (1999), the *Sexton* instruction does not support his affirmative defense argument. The New Jersey Supreme Court suggested this formulation of the instruction:

If you find that the State has not proven beyond a reasonable doubt that the defendant was reckless in forming his belief that the gun was not loaded, defendant should be acquitted of the offense of manslaughter. On the other hand, if you find that the State has proven beyond a reasonable doubt that the defendant was reckless in forming the belief that the gun was not loaded, and consciously disregarded a substantial and unjustifiable risk that a killing would result from his conduct, then you should convict him of manslaughter.

*Id.*

evidence of a mistake of fact may raise a reasonable doubt as to the existence of a required culpable state of mind, in this case either recklessness or criminal negligence." This instruction is entirely consistent with the applicable mistake-of-fact statute, 17–A M.R.S. § 36(1). *See* Alexander, *Maine Jury Instruction Manual* § 6–47 at 6–64.

[¶ 18] Accordingly, the court's jury instructions correctly explained the mistake-of-fact statute, 17–A M.R.S. § 36(1), and contained neither error nor obvious error, *see State v. Burdick,* 2001 ME 143, ¶ 13, 782 A.2d 319, 324; *State v. Poole,* 568 A.2d 830, 831–32 (Me.1990).

**B. Identification and Sufficiency of the Evidence**

■ [¶ 19] LaVallee–Davidson's remaining arguments on appeal are not persuasive. Contrary to his contention, there was sufficient evidence for the jury to conclude beyond a reasonable doubt that the individual in the courtroom was the same LaVallee–Davidson who caused the death of the victim. *See State v. Cook,* 2010 ME 85, ¶ 7, 2 A.3d 333, 336 (stating that the jury's "[d]eterminations of the weight and credibility to be afforded the evidence are within [its] exclusive province, and it is permitted to draw all reasonable inferences from the evidence" (quotation marks omitted)); *State v. Jackson,* 1997 ME 174, ¶ 15, 697 A.2d 1328, 1332 ("Identification of the accused is an issue of fact that is properly submitted to the jury."); *State v. Guptill,* 481 A.2d 772, 775 (Me.1984) ("The State may establish the identity of an accused through purely circumstantial evidence."). In particular, the State offered in evidence a videotaped police interview of LaVallee–Davidson that revealed his face and his physical characteristics, and several witnesses who knew LaVallee–Davidson personally testified about what he had done and said. *See Jackson,* 1997 ME 174, ¶¶ 14–15, 697 A.2d at 1332.

[¶ 20] Finally, the evidence was more than sufficient for the jury to find that LaVallee–Davidson acted either recklessly or with criminal negligence when he twice pulled the trigger of the gun placed against the head of the victim without first assuring himself that the gun did not contain the bullets that LaVallee–Davidson had brought to the victim's house. 17–A M.R.S. §§ 35(3), (4), 203(1)(A); *see State v. Allen,* 2006 ME 20, ¶ 27, 892 A.2d 447, 455 (upholding sufficiency of the evidence of manslaughter for violently shaking a child); *State v. Benner,* 654 A.2d 435, 437 (Me.1995) (stating that a conviction may be based solely on circumstantial evidence and reasonable inferences drawn from it); *State v. Gorman,* 648 A.2d 967, 968 (Me. 1994).

The entry is:

Judgment affirmed.