# United States Court of Appeals
## For the First Circuit

No. 20-2015

SELCUK KARAMANOGLU,

Plaintiff, Appellant,

v.

TOWN OF YARMOUTH; BRIAN ANDREASEN, individually; DANIEL GALLANT,
in his capacity as Chief of Police of the Yarmouth Police
Department,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. John H. Rich III, U.S. Magistrate Judge]

Before

Thompson and Kayatta, Circuit Judges,
and Woodlock,* District Judge.

Tyler J. Smith, with whom Gene R. Libby was on brief, for
appellant.
Kasia S. Park, with whom Edward R. Benjamin, Jr. was on brief,
for appellees.

September 30, 2021

_____

* Of the District of Massachusetts, sitting by designation.

**WOODLOCK, District Judge.** What has become this federal case originated in a domestic relations dispute scenario more familiar to local police and state courts. A jealous girlfriend entered the house of her boyfriend while he was sleeping to look for evidence of infidelity. After she woke him and they engaged in a heated discussion, the boyfriend told her to leave. She refused and began hitting him; he responded by violently pushing her out of the house.

She reported the incident to the police. The officer assigned that evening interviewed her and then interviewed the boyfriend, whom he thereupon arrested for domestic abuse assault.

When the charges were dropped and the boyfriend no longer faced the potential for an adverse criminal judgment, he sued the assigned police officer, the police chief, and the town in federal court for violating his federal and state civil rights by arresting him without probable cause. He contended that he had used justifiable force under state law to defend himself and his property during his encounter with the girlfriend.

On the Defendants' motion for summary judgment, the district court dismissed the case, finding that the officer had probable cause to arrest the boyfriend. As we will explain, on de novo review, we agree.

## I.

### A. Factual Background

On the evening of Saturday, June 15, 2018, Rose Heikkinen — a girlfriend and sexual partner of Plaintiff Selcuk Karamanoglu, who had been staying with him every weekend — used a garage door opener in her possession to enter Mr. Karamanoglu's Yarmouth, Maine home. She searched unsuccessfully for his phone while he slept, woke him to demand the phone, and ultimately confronted him about a message he had received from an ex-girlfriend. As a result of that questioning, she hit Mr. Karamanoglu with the garage door opener and the phone, causing physical injuries to him. After she then smashed the garage door opener on the floor and lifted the phone into the air, Mr. Karamanoglu grabbed her wrists to stop her from hitting him and told her to leave his house.

Ms. Heikkinen continued to try to hit Mr. Karamanoglu as he pushed her toward the doorway, and at one point she pushed him to the ground. According to Ms. Heikkinen, Mr. Karamanoglu grabbed her neck while pushing her out of the house and eventually pushed her down "two or three" stairs onto the garage floor.

Ms. Heikkinen went to the Yarmouth police station, where she presented her account of the incident orally to Officer Brian Andreasen, who was called into the station that evening to investigate the complaint. In addition to eliciting oral statements from Ms. Heikkinen, Officer Andreasen also obtained a

- 3 -

written statement from her. In relaying her account to Officer Andreasen orally, Ms. Heikkinen characterized herself as "more aggressive" than Mr. Karamanoglu throughout the interaction. Officer Andreasen observed blood on her clothing, marks on her neck, and that she was holding her ribcage while complaining of pain there.

Officer Andreasen next went to Mr. Karamanoglu's house to hear his account, bringing along Joshua Robinson, another officer on duty that night. Mr. Karamanoglu told the officers that Ms. Heikkinen attacked him and that he was pushing her to try to remove her from his home. Mr. Karamanoglu says he showed Officer Andreasen wounds on his arm, hand, and chest.[1]

Officer Andreasen then arrested Mr. Karamanoglu for domestic violence assault. In his deposition, Officer Andreasen testified that all of Mr. Karamanoglu's use of force could be justified except for the grab of Ms. Heikkinen's neck.

The case against Mr. Karamanoglu was dropped in state

---

[1] Officer Andreasen testified in his deposition and by affidavit that he did not see (or at least did not remember seeing) any visible injuries on Mr. Karamanoglu. For his part, Mr. Karamanoglu alleges that "Andreasen did not want to listen to what [he] the plaintiff was saying." The blood observed on Ms. Heikkinen's clothing was consistent with Mr. Karamanoglu's testimony concerning his visible injuries. Thus, treating the evidence of record in the light most favorable to Mr. Karamanoglu, we find the record sufficient to establish that when Officer Andreasen interviewed Mr. Karamanoglu, he displayed visible injuries that had been inflicted by Ms. Heikkinen, as corroborated by blood on her clothing.

court on June 21, 2018 — less than a week after the arrest.  An assistant district attorney gave the following oral explanation to the court:

> By victim's, Rose['s], own admission, she went to Selcuk's home at night while he was sleeping, entered without his permission, woke him up.  She was angry because she thought he had been seeing someone else.  He told her repeatedly to leave.  She refused repeatedly.  She was committing a criminal trespass and he was justified in using reasonable force to remove her from his home.  The force he used was reasonable and she used force against him in return including grabbing him by his testicles,[2] thereby escalating the violence.  No likelihood of successful prosecution.

## B. Procedural History

Some six months after the case against him was dismissed, Mr. Karamanoglu sued the Town of Yarmouth, Officer Andreasen and the Chief of the Yarmouth Police Department, on January 14, 2019 in the United States District Court for the District of Maine. Karamanoglu claimed that he was arrested without probable cause and sought relief under both 42 U.S.C. § 1983 and the Maine Civil Rights Act, Me. Rev. Stat. Ann. tit. 5, § 4681, et seq.  The parties thereafter agreed that, for summary judgment purposes, resolution of the federal claim would control the outcome of the

---

2  That Ms. Heikkinen grabbed Mr. Karamanoglu by his testicles was apparently a fact unknown to Officer Andreasen at the time of arrest.  As a consequence, we do not consider that allegation part of the body of information upon which Officer Andreasen could have relied in making his determination of whom, if anyone, to arrest.

state law claim.  The case proceeded upon consent before Magistrate Judge Rich, who granted Defendants' motion for summary judgment concluding that (i) Officer Andreasen had probable cause for his arrest of Mr. Karamanoglu, (ii) even if he did not, he was entitled to qualified immunity in his decision to make the arrest, (iii) without a constitutional violation by Officer Andreasen, any municipal and supervisory liability claims against the Town of Yarmouth and its Chief of Police failed, and (iv) even if there were an underlying constitutional violation by Officer Andreasen, Mr. Karamanoglu did not adequately allege that the Town of Yarmouth acted with deliberate indifference.

Mr. Karamanoglu has appealed the grant of summary judgment, arguing that Officer Andreasen lacked probable cause to arrest him.

## II.

As explained, Mr. Karamanoglu brings a federal cause of action alleging that his arrest was unlawful because Officer Andreasen lacked probable cause to arrest Mr. Karamanoglu for domestic violence assault.  To evaluate this claim, we first consider the elements of domestic violence assault under Maine law.  We then look to federal law to determine whether Officer Andreasen had probable cause to believe Mr. Karamanoglu had committed the state-law offense.

**A.**

We set the stage by describing the relevant elements of the crime for which Mr. Karamanoglu was arrested. In Maine, a person has committed the crime of domestic violence assault if he or she has intentionally, knowingly, or recklessly caused bodily injury or offensive physical contact to a family or household member. Me. Rev. Stat. Ann. tit. 17-A, §§ 207, 207-A. Family or household members in this context include individuals "who are or were sexual partners." Me. Rev. Stat. Ann. tit. 19-A, § 4002(4). Under Maine law, "a law enforcement officer may arrest without a warrant . . . [a]ny person who the officer has probable cause to believe has committed . . . [d]omestic violence assault." Me. Rev. Stat. Ann. tit. 17-A, § 15(1)(A)(5-B).

Maine criminal law recognizes "three broad categories of criminal defenses," including justifications for what would otherwise be an assault. State v. Ouellette, 37 A.3d 921, 925 (Me. 2012).[3] Two such justifications are relevant here.

Maine law provides that a "reasonable degree of

---

[3] In Ouellette, Maine's Supreme Judicial Court reiterated its enumeration of "the three broad categories of criminal defenses — a failure of the State's proof, an affirmative defense, and a justification or excuse" — noting that they "differ primarily based on the allocation of the parties' respective burdens." 37 A.3d at 925 (citing State v. LaVallee-Davidson, 26 A.3d 828, 832–33 (Me. 2011)). Under Maine criminal law "a justification places on the defendant a burden of production to generate an issue with sufficient evidence, and then imposes on the State the burden of persuasion to disprove the defense." Id. (citation omitted).

nondeadly force" used during a domestic violence assault may be justified if it was deployed in self-defense — i.e., to defend against the imminent use of unlawful, nondeadly force by another — as long as the person using defensive force did not provoke the use of force by the other person and was not "the initial aggressor."  Me. Rev. Stat. Ann. tit. 17-A, § 108.1.B.[4]  A person

<hr>

Maine criminal law strictly construes statutory justifications.  See generally State v. Williams, 433 A.2d 765, 769–70 (Me. 1981) (concluding that "deadly force" does not include a threat to use such force).

[4] Section 108.1, in pertinent part, specifically states that:

> A person is justified in using a reasonable degree of nondeadly force upon another person in order to defend the person or a 3rd person from what the person reasonably believes to be the imminent use of unlawful, nondeadly force by such other person, and the person may use a degree of such force that the person reasonably believes to be necessary for such purpose.  However, such force is not justifiable if:
>
> A. With a purpose to cause physical harm to another person, the person provoked the use of unlawful, nondeadly force by such other person; or
>
> B. The person was the initial aggressor, unless after such aggression the person withdraws from the encounter and effectively communicates to such other person the intent to do so, but the other person notwithstanding continues the use or threat of unlawful, nondeadly force;
>
> . . . .

Me. Rev. Stat. Ann. tit. 17-A, § 108.1.

defending against domestic violence assault may, however, only use the degree of force that the person "reasonably believes to be necessary" for purposes of self-defense. Id.

On a parallel track, Maine law provides that a person in control of premises is justified in using nondeadly force on another person if he "reasonably believes it necessary to prevent or terminate the commission of a criminal trespass" by that person. Me. Rev. Stat. Ann. tit. 17-A, § 104.1.[5] A person commits a criminal trespass if she enters a dwelling place knowing that she is not licensed or privileged to do so or remains in that place after a lawful order to leave. Me. Rev. Stat. Ann. tit. 17-A, § 402.1(A), (D).

To prevail at trial, the government must disprove any justification presented beyond a reasonable doubt if evidence of record raises the issue. See generally State v. Cardilli, 254 A.3d 415, 421-24 (Me. 2021) (discussing deadly force justifications); State v. Asante, 236 A.3d 464, 469 (Me. 2020)

---

[5] Section 104.1 specifically states that:

> A person in possession or control of premises or a person who is licensed or privileged to be thereon is justified in using nondeadly force upon another person when and to the extent that the person reasonably believes it necessary to prevent or terminate the commission of a criminal trespass by such other person in or upon such premises.

Me. Rev. Stat. Ann. tit. 17-A, § 104.1.

- 9 -

(discussing deadly force and self-defense); State v. Villacci, 187 A.3d 576, 580-81 (Me. 2018) (discussing justifications for domestic violence assault); Ouellette, 37 A.3d at 925-30 (discussing categories of criminal defenses). However, as we will explain, an officer in the field need not disprove a potential justification beyond a reasonable doubt before making an arrest.

**B.**

Having examined the state-law offense for which Mr. Karamanoglu was arrested, we turn to the question of whether that arrest was unreasonable under federal law.

The elements of a § 1983 unlawful arrest claim are analogous to the common-law tort of false arrest. See Wallace v. Kato, 549 U.S. 384, 388 (2007). A federal constitutional tort of false arrest — and thus an unlawful arrest under § 1983 — occurs when there is detention without probable cause and without legal process (i.e., without a valid warrant). See id. at 388-89; Jordan v. Town of Waldoboro, 943 F.3d 532, 551 (1st Cir. 2019); (Barron, J., concurring). The police response in this case, involving a warrantless arrest for a contested state-law criminal violation, must therefore be evaluated against principles of probable cause under the Fourth Amendment to the United States Constitution.

The Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const. amend. IV. Arrests are

seizures under the Fourth Amendment, and therefore must be reasonable. See Payton v. New York, 445 U.S. 573, 585 (1980). Thus, in the case of an arrest for domestic violence assault, the reasonableness of the arrest depends on whether an officer with authority to make a warrantless arrest had probable cause to believe that the person committed the crime of domestic violence assault. See Bailey v. United States, 568 U.S. 186, 192 (2013). "[P]robable cause exists when an officer, acting upon apparently trustworthy information, reasonably can conclude that a crime has been . . . committed and that the suspect is implicated in its commission." United States v. Flores, 888 F.3d 537, 543 (1st Cir. 2018) (quoting Morelli v. Webster, 552 F.3d 12, 21 (1st Cir. 2009)). Probable cause is defined by federal law, not state law. Virginia v. Moore, 553 U.S. 164, 172 (2008).

Whether an officer had probable cause for an arrest is determined by viewing the totality of the circumstances from the perspective of an objectively reasonable officer. Maryland v. Pringle, 540 U.S. 366, 371 (2003). Consequently, "[i]n assessing whether probable cause exists, we consider 'the whole picture.'" Jordan, 943 F.3d at 542 (quoting District of Columbia v. Wesby, 138 S. Ct. 577, 588 (2018)). Probable cause is "a fluid concept" and "not a high bar." Illinois v. Gates, 462 U.S. 213, 232 (1983);

Wesby, 138 S. Ct. at 586 (quoting Kaley v. United States, 571 U.S. 320, 338 (2014)).

"[U]ncorroborated testimony of a victim or other percipient witness, standing alone, ordinarily can support a finding of probable cause." Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 10 (1st Cir. 2004). Corroboration of a victim's account may also provide further support for probable cause. See Nelson v. Moore, 470 F.2d 1192, 1197 (1st Cir. 1972) (finding probable cause to arrest petitioner for assault based on victim statement corroborated by victim's visible injuries and possession of key). On the other hand, where a witness account is disputed, police officers do not have an "unflagging duty" to complete a full investigation before making a probable cause determination. Acosta, 386 F.3d at 11; Holder v. Town of Sandown, 585 F.3d 500, 505-06 (1st Cir. 2009) (finding sufficient probable cause for assault despite different accounts by husband and wife). Town of Sandown was explicit in its "reliance on Supreme Court precedent," for this court's "reject[ion of] the proposition that a police officer has a standing obligation to investigate potential defenses or resolve conflicting accounts prior to making an arrest." Id. at 505 (emphasis supplied, citation omitted).

However, an officer may not "treat evidence of innocence with impunity." Brady v. Dill, 187 F.3d 104, 114 (1st Cir. 1999). Because probable cause is a totality-of-the-circumstances

- 12 -

determination, courts will not ignore "facts tending to dissipate probable cause." Ramirez v. City of Buena Park, 560 F.3d 1012, 1023–24 (9th Cir. 2009) (citation omitted). Such facts, of course, are part of the whole picture. See, e.g., Garcia v. Doe, 779 F.3d 84, 93 (2d Cir. 2015) (noting that although officers need not explore every claim of innocence, their deliberate disregard of known facts may defeat probable cause); Kuehl v. Burtis, 173 F.3d 646, 650–51 (8th Cir. 1999) (finding no probable cause when officer failed to interview eyewitness and did not consider evidence negating requisite intent for assault); Bigford v. Taylor, 834 F.2d 1213, 1218–20 (5th Cir. 1988) (finding that obvious age and worn condition of vehicle negated finding probable cause that vehicle had been stolen when no matching vehicle reported stolen).

The relevant inquiry is whether, on balance, the facts known to the officer at the time of the arrest support probable cause. See Town of Sandown, 585 F.3d at 504. And because probable cause "does not deal with hard certainties, but with probabilities," Gates, 462 U.S. at 231 (quoting United States v. Cortez, 449 U.S. 411, 418 (1981)), probable cause to believe one person committed a crime by definition does not foreclose the possibility that probable cause would also exist to believe another person committed the same or a parallel crime. When two people are striking each other, it is certainly possible that probable cause may exist to arrest either or both of them. In each instance, it

depends on whether the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person . . . in believing . . . that the suspect has committed, is committing, or is about to commit an offense." Michigan v. Defillippo, 443 U.S. 31, 37 (1979).

We have recently observed that "probable cause is not a creature of certainty and does not require either the level of proof needed to secure a conviction or even an 'unusually high degree of assurance.'" United States v. Centeno-González, 989 F.3d 36, 45 (1st Cir. 2021) (quoting United States v. Clark, 685 F.3d 72, 76 (1st Cir. 2012)). Rather, an officer's conclusion that probable cause exists requires only objective reasonableness. Acosta, 386 F.3d at 10-11 (quoting United States v. Winchenbach, 197 F.3d 548, 555 (1st Cir. 1999)).

## C.

We now consider whether Officer Andreasen's decision to arrest Mr. Karamanoglu was objectively reasonable. Our review of the grant of summary judgment by the district court is de novo, taking the facts in the light most favorable to the Plaintiff as the non-moving party, see Jordan, 943 F.3d at 536, bearing in mind that while "only a jury can resolve reasonably disputed issues of fact, whether a given set of facts constitutes probable cause is a legal question," id. at 541.

- 14 -

Mr. Karamanoglu contends that his arrest for state domestic violence assault was not premised on probable cause and thus violated his Fourth Amendment right to be free from unreasonable seizure because there was at least a genuine issue of fact whether the facts known to the police officer at the time of the arrest justified the use of the force Mr. Karamanoglu deployed against Ms. Heikkinen because she was the initial aggressor and a trespasser under the Maine justifications for self-defense and defense of premises.

We review the facts not in dispute that can be said on the record before us to have been known to Officer Andreasen when the arrest was made and conclude that the record establishes there was probable cause under the Fourth Amendment to arrest Mr. Karamanoglu on the night in question. Upon that review we find that Mr. Karamanoglu's lawsuit does not surmount the threshold for a federal constitutional violation and that judgment for the Defendant-Appellees is appropriate.

Ms. Heikkinen told Officer Andreasen that she and Mr. Karamanoglu had been dating on and off for approximately three years and that they had a sexual relationship. Officer Andreasen's conversation with Mr. Karamanoglu did not reveal any contradictory information as to the nature of their relationship. Officer Andreasen therefore had probable cause to believe that Mr. Karamanoglu and Ms. Heikkinen were family or household members

for purposes of Maine domestic violence assault law, which includes current or former sexual partners within its ambit. Me. Rev. Stat. Ann. tit. 19-A, § 4002(4).

According to Ms. Heikkinen's statement, she initiated the physical confrontation by hitting Mr. Karamanoglu, to which he responded by attempting to push her out of the house. As reported in Ms. Heikkinen's oral and written accounts, Mr. Karamanoglu grabbed her neck at some point during this altercation. Officer Andreasen observed marks on Ms. Heikkinen's neck that were consistent with this account. Ms. Heikkinen also stated in writing that Mr. Karamanoglu pushed her "down the steps into the garage" and onto the garage floor, conceding that she "pushed him to the ground too."

When Officers Andreasen and Robinson arrived at the home, Mr. Karamanoglu confirmed that he pushed Ms. Heikkinen out of the house. Ms. Heikkinen had asserted to the officer that she believed it was during this shove and fall when she hurt her ribs, and Officer Andreasen noticed that she was holding the right side of her ribs. That information, obtained from a percipient witness and corroborated by officer observations, was sufficient for an objectively reasonable officer to conclude that Mr. Karamanoglu "intentionally, knowingly or recklessly cause[d] bodily injury" to

Ms. Heikkinen.[6] Me. Rev. Stat. Ann. tit. 17-A, §§ 207, 207-A. It also was sufficient for an objectively reasonable officer to conclude Ms. Heikkinen caused such injury to Mr. Karamanoglu.

As part of our evaluation of the totality of the circumstances and consideration of the whole picture, we tighten the frame to focus specifically on Mr. Karamanoglu's claims of self-defense and defense of premises.

With respect to self-defense, Ms. Heikkinen told Officer Andreasen that she was the "more aggressive" party and began the physical encounter. In her written statement, Ms. Heikkinen made clear that she "hit [Mr. Karamanoglu] on the chest" and repeatedly pushed him, including pushing him to the ground. While Officer Andreasen asserts that he did not see any visible injuries on Mr. Karamanoglu, in the posture of summary judgment practice, we accept Mr. Karamanoglu's testimony that he showed both officers injuries on his arm, hand, and chest.[7] We treat that dispute in

---

[6] The parties dispute whether Officer Andreasen had knowledge of prior domestic abuse incidents involving Mr. Karamanoglu at the time of the arrest. The District Court in finding that there was probable cause did not rely on any knowledge by Officer Andreasen of such prior incidents. We take the same approach, reading the record before us in the light most favorable to Mr. Karamanoglu.

[7] The district court struck certain materials from the record — including photographs showing Mr. Karamanoglu's injuries taken after he was released on bail — because the observations they permitted were developed after Officer Andreasen made his probable cause determination. Mr. Karamanoglu challenges this determination. We need not decide the point because, on de novo review, our conclusion remains the same whether the photos are considered or not. As to the stricken materials regarding a

- 17 -

the light most favorable to Mr. Karamanoglu.

Regarding defense of premises, the facts known to Officer Andreasen at the time of the arrest do not unequivocally support a finding that Ms. Heikkinen was engaged in a criminal trespass. To be sure, Ms. Heikkinen referred to the house as "Selcuk's house" in her written statement, and she stated that she entered the house without his knowledge and that he ordered her to "get out!" However, she entered using a garage door opener given to her by Mr. Karamanoglu,[8] her car was registered to the address of the home, and her driver's license was also listed at that address. We need not decide the question because the degree of force Mr. Karamanoglu used as reflected in the record, even when read in the light most favorable to him, could be viewed as unreasonable despite the fact that some force may have been justified.

In her written statement, Ms. Heikkinen also admitted that Mr. Karamanoglu told her to leave before he began using force. On these facts an objective officer should have concluded that

---

subsequent police internal investigation, we do not disturb the district court's finding because the materials were offered to contest the issue of municipal liability, a matter we do not reach.

[8] The parties dispute the circumstances under which Ms. Heikkinen had the garage door opener that evening. Nevertheless, it is undisputed that the arresting officer knew the garage door opener was in her vehicle, apparently giving her authorized access to Mr. Karamanoglu's house on the night in question.

Mr. Karamanoglu was justified in using some force to defend himself against an attack that he did not initiate or provoke, or to defend his home against a no-longer-welcome guest he had directed to leave the premises. But how much force had been necessary was a matter of judgment and we conclude that Officer Andreasen's exercise of implicit judgment in this regard — that the force used by Mr. Karamanoglu was not necessary, but rather was disproportionate — was objectively reasonable.

An objectively reasonable officer evaluating the circumstances here could have concluded that grabbing Ms. Heikkinen's neck during a domestic scrum that ended with Mr. Karamanoglu pushing her down the stairs onto a garage floor was unreasonable and disproportionate under the circumstances. The narratives of both parties and Ms. Heikkinen's apparent injuries support that conclusion.

For federal constitutional purposes, we ask only whether there was probable cause to arrest for the crime identified. Here, where the prima facie elements of domestic violence assault were indisputably satisfied as to Mr. Karamanoglu and an objectively reasonable officer could conclude based on facts known at the time that an unreasonable amount of force was used by Mr. Karamanoglu against Ms. Heikkinen, we answer in the affirmative.[9]

---

[9] Because the case law in this setting is inherently fact-specific, a number of relevant written opinions have been

## III.

For the foregoing reasons, we conclude that there was probable cause under federal common law supporting the arrest of Mr. Karamanoglu for domestic violence assault. There was no violation of his Fourth Amendment rights, and the district court's grant of summary judgment against him was proper. Because there was no underlying federal constitutional violation in this case,

---

designated as non-precedential. Nevertheless, a review of both appellate and trial court decisions, particularly in the Second Circuit, confirms our conclusion. See, e.g., Iocovello v. City of New York, 701 F. App'x 71, 71–73 (2d Cir. 2017) (mem.) (finding probable cause to arrest assault victim when officer arrested both victim and perpetrator after listening to statements and observing injuries); Rhodes v. Pittard, 485 F. App'x 113, 115–16 (6th Cir. 2012) (per curiam) (finding probable cause to arrest homeowner for assault of trespasser despite homeowner's claims of defense of premises, when homeowner admitted to pushing trespasser); Curley v. Village of Suffern, 268 F.3d 65, 69–70 (2d Cir. 2001) (finding probable cause to arrest plaintiff after barfight despite conflicting accounts from him and other participants, when plaintiff admitted striking the victim and alleged victim had visible injuries; observing that "[a]lthough a better procedure may have been for the officers to investigate plaintiff's version of events more completely, the arresting officer does not have to prove plaintiff's version wrong before arresting him"); Thompson v. Kline, 504 F. Supp. 3d 200, 208–09 (W.D.N.Y. 2020) (finding probable cause to arrest boyfriend when both boyfriend and girlfriend reported domestic incident, boyfriend claimed self-defense, officer observed girlfriend to have more serious visible injuries, and boyfriend admitted pushing her); Moscoso v. City of New York, 92 F. Supp. 2d 310, 314 (S.D.N.Y. 2000) (finding probable cause to arrest plaintiff when plaintiff admitted assault but claimed self-defense justification); Ray v. City of Lacey, No. C09-5636RJB, 2010 WL 3220108, at *11–13 (W.D. Wash. Aug. 10, 2010) (finding probable cause to arrest husband after domestic dispute where wife admitted to instigating physical fight, but officers determined husband was primary aggressor after observing both parties' visible injuries).

we do not reach the qualified immunity and municipal liability contentions also addressed in the parties' briefing.

**AFFIRMED.**